**No**. **25-5097**

**UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

HUA JIANG,
Plaintiff-Appellant,
v.
CITY OF TULSA,
Defendant–Appellee.

**APPELLANT'S OPENING BRIEF**

APPEALED FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
23-CV-255-CVE-CDL
The Honorable Claire V. Eagan
*United States District Judge*

Mark A. Smith, OBA No. 31231
Caruso & Smith, PLLC
2021 South Lewis Avenue, Suite 720
Tulsa, Oklahoma 74104
(918) 583-5900
mark.smith@smithlegalok.com

Daniel E. Smolen, OBA No. 19943
Smolen & Roytman, PLLC
701 South Cincinnati Avenue
Tulsa, Oklahoma 74119
(918) 585-2667
danielsmolen@ssrok.com

ORAL ARGUMENT IS REQUESTED

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ------------------------------------------------------------------- i

TABLE OF AUTHORITIES ----------------------------------------------------------- ii

STATEMENT OF PRIOR OR RELATED APPEALS ------------------------------ iii

GLOSSARY ------------------------------------------------------------------------------- iii

JURISDICTIONAL STATEMENT --------------------------------------------------- 1

STATEMENT OF THE ISSUES PRESENTED---------------------------------------- 1

STATEMENT OF THE CASE ------------------------------------------------------------ 2

   I. LEGAL BACKGROUND -------------------------------------------------------- 2

     A. Disparate Treatment & Retaliation Claims under the *McDonnell Douglas* Framework ------------------------------------------------------------------------- 2

     B.  *McDonnell Douglas* Framework should be overturned in favor of a Totality of the Circumstances Standard ----------------------------------------- 4

   II. Factual Background ------------------------------------------------------ 7

   II. Procedural History ---------------------------------------------------------11

SUMMARY OF THE ARGUMENT----------------------------------------------------12

STANDARD OF REVIEW ---------------------------------------------------------------15

ARGUMENT ----------------------------------------------------------------------------------15

   I. The record would allow a reasonable jury to find pretext.---------------------15

     A. Procedural Irregularities. --------------------------------------------------16

     B. Subjectivity in the Selection Process. ------------------------------------19

     C. Jiang's Qualifications.------------------------------------------------------20

     D. The Totality of the Circumstances raises an Inference of Discrimination.-22

   II. Jiang's retaliation claim presents triable issues.--------------------------------23

     A. Adverse Employment Action.----------------------------------------------24

     B. Pretext. ---------------------------------------------------------------------26

CONCLUSION--------------------------------------------------------------------------------28

STATEMENT REGARDING ORAL ARGUMENT -------------------------------28

CERTIFICATE OF DIGITAL SUBMISSION--------------------------------------29

CERTIFICATE OF SERVICE ---------------------------------------------------------29

ATTACHEMENT 1: Opinion and Order Granting Motion for Summary Judgment Filed June 2, 2025----------------------------------------Vol. V, APP. 1262
ATTACHEMENT 2: Judgement Filed June 2, 2025--------------Vol. V, APP. 1284

# TABLE OF AUTHORITIES

### CASES

*Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998)............... 16, 21, 27

*Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540 (2025)(Thomas, J. and Gorsuch, J. concurring)...................................................... 4, 5, 6, 22, 23, 27

*Berry v. Crestwood Healthcare LP*, 84 F.4th 1300  (11th Cir. 2023).......... 7, 23, 27

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)...................................................................................... 25, 27

*Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013)........................................ 17, 27

*Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968 (10th Cir. 2025) ................................................................................................ 26, 27

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210 (10th Cir. 2002) ............... 3, 20, 27

*Hansen v. SkyWest Airlines*, 844 F.3d 914 (10th Cir. 2016) ...............................3, 27

*Jenny v. L3Harris Techs., Inc.*, 24-4032, 2025 WL 2025312 (10th Cir. July 21, 2025)(Eid, J. concurring)................................................................ 4, 5, 27

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)................................................................................. 24, 27

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).............. 6, 7, 23, 27

*Santana v. City & Cnty. of Denver*, 488 F.3d 860 (10th Cir. 2007) ....................2, 27

*Tynes v. Florida Dep't of Juvenile Justice*, 88 F.4th 939 (11th Cir. 2023)(Newsom, C.J., concurring) ..............................................................................5, 27

*Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321 (10th Cir. 2025) .......................................... 3, 15, 27

STATUTES

28 U.S.C. § 1291 ----------------------------------------------------------------------- 1

28 U.S.C. § 1331 ----------------------------------------------------------------------- 1

28 U.S.C. § 1367 ----------------------------------------------------------------------- 1

42 U.S.C.A. § 2000e-3------------------------------------------------------------------24

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals arising from this action. The district court entered final judgment granting summary judgment for the City on June 2, 2025.

## GLOSSARY

**ADEA –** Age Discrimination in Employment Act

**CSC –** Civil Service Commission

**HR –** Human Resources

**OADA –** Oklahoma Anti-Discrimination Act

## JURISDICTIONAL STATEMENT

The district court has federal-question jurisdiction under 28 U.S.C. § 1331 over Jiang's Title VII and ADEA claims and supplemental jurisdiction under 28 U.S.C. § 1367 over his OADA claims. The court entered final judgment on June 2, 2025, disposing of all claims. This Court has jurisdiction under 28 U.S.C. § 1291. Jiang timely filed a notice of appeal. The district court also recognized that, viewing the record in the light most favorable to Jiang, his claims were not time-barred to the extent encompassed by his November 2021 charge.

## STATEMENT OF THE ISSUES PRESENTED

1.    **Disparate Treatment**: Whether the District Court erred by failing to view disputed facts and permissible inferences in Jiang's favor when the record shows Jiang presented evidence of three circumstances establishing pretext.

2.    **Retaliation**: Whether the court erred in holding that Mr. Jiang suffered no adverse employment action. Whether the District Court erred in requiring Jiang to show he personally was dissuaded from making a charge of discrimination rather than applying a reasonable employee standard.

3.    **Legal Standard Application**: Whether the district court misapplied Rule 56 by weighing credibility and evidence and making arguments on the City's behalf not raised in its Motion, rather than sending genuine disputes to a jury.

1

4.      **McDonnell Douglas Framework:** Whether the District Court erred by conflating the *McDonnell Douglas* burden-shifting framework with Plaintiff's substantive elements of his claims and ignoring Plaintiff's substantial circumstantial evidence of intentional discrimination.

## STATEMENT OF THE CASE

## I. LEGAL BACKGROUND

**A. Disparate Treatment & Retaliation Claims under the *McDonnell Douglas* Framework**

Mr. Jiang alleges disparate-treatment discrimination and retaliation under Title VII and the OADA based upon his race (Asian) and national Origin (China), and age discrimination and retaliation under the ADEA and OADA. The City and the District Court below analyzed these claims under the *McDonnell Douglas* burden-shifting framework. City and the District Court below admitted Plaintiff has a prima facie case of disparate treatment. However, the City disputed whether Plaintiff could make a prima facie case of retaliation.

"In a Title VII disparate treatment claim, once a prima facie case has been established, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for not promoting the plaintiff." *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 864 (10th Cir. 2007)(citing *Texas Dep't of Cmty. Affairs v.*

2

*Burdine*, 450 U.S. 248, 254-255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "After the defendant has offered its non-discriminatory explanation, the prima facie case is rebutted and the burden of proving pretext shifts back to the plaintiff." *Id.*

"[P]retext can be inferred from evidence revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanation,' or it can be shown 'by providing direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated.'" *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016)(citations omitted). 'The plaintiff need not show both that the defendant's reasons were a pretext and that the real reason was discrimination—the fact of pretext alone may allow the inference of discrimination.' *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Oklahoma Bd. of Regents*, 125 F.4th 1321, 1337 (10th Cir. 2025)(quoting *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135-36 (10th Cir. 2003)).

'A plaintiff establishes a prima facie case of retaliation by showing: (1) he or she is engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.' *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1220 (10th Cir. 2002)(quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000)). The City challenged the last two elements on

3

summary judgment. The issue of pretext in relation to Jiang's retaliation claim was simply adopted from the pretext discussion under his disparate treatment claims.

**B.    *McDonnell Douglas* Framework should be overturned in favor of a Totality of the Circumstances Standard**

"Our precedent makes clear that the framework is, at most, a 'procedural device, designed only to establish an order of proof and production' when evaluating circumstantial evidence." *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1548, 1554-1555 (2025)(Thomas, J. and Gorsuch, J. concurring)(quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 521, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "Put another way, it is '"merely"' a '"way to evaluate the evidence'" that bears on the ultimate finding of liability." *Id.* (quoting *Aikens*, 460 U.S., at 715, 103 S.Ct. 1478). "Yet, some courts treat *McDonnell Douglas* as a substantive legal standard that a plaintiff must establish to survive summary judgment or to ultimately prove a claim." *Id.* citing (*Tynes*, 88 F.4th at 945)(Newsom, C.J., concurring. "Ultimately, the district court should have focused on the true Rule 56 question: whether the record, viewed in the light most favorable to [Plaintiff], would allow a jury to infer intentional discrimination." *Jenny v. L3Harris Techs., Inc.*, 24-4032, 2025 WL 2025312, at *8 (10th Cir. July 21, 2025)(Eid, J. concurring)(citing *Wells*, 325 F.3d at 1224 (Hartz, J., writing separately)).

4

"At summary judgment, the prima facie case is 'almost always irrelevant' and 'usually [a] misplaced' inquiry—because once the defendant offers an explanation for its decision, 'whether the plaintiff really' made out a prima facie case no longer matters." *Tynes v. Florida Dep't of Juvenile Justice,* 88 F.4th 939, 953 (11th Cir. 2023)(Newsom, C.J., concurring), cert. denied, *Florida Dep't of Juvenile Justice v. Tynes*, 145 S. Ct. 154 (2024)(quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-494 (D.C. Cir. 2008)).

"[A]t the third step, the question for the court cannot be whether the plaintiff has 'prove[d] by a preponderance of the evidence that the legitimate reasons offered by the defendant ... were a pretext for discrimination.'" *Ames*, 145 S. Ct. at 1553 (Thomas, J. and Gorsuch, J. concurring)(quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). "Instead, the plaintiff need only present sufficient evidence to create a 'genuine dispute as to' whether the employer's stated reason was pretextual." *Id.* (quoting Rule 56(a)). "[I]f a case has made it to the third step (such that *Reeves*'s pretext inquiry has come into play), both parties by that point will usually have met their burden of production, leaving only the question of whose explanation to believe—which is a question of fact for the jury to decide." *Jenny*, 24-4032, 2025 WL 2025312, at *6 (Eid, J. Concurring)(citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 643 (7th Cir. 2002) ("[T]he fact that the defendant may be able to produce evidence that the plaintiff was fired for a lawful reason just creates

5

an issue of fact: what was the true cause of the discharge?"). "It would defy Rule 56 for district courts to weigh the relative strength of the plaintiff's evidence against the defendant's, as *Reeves* might be read to suggest." *Id.*

"In short, the three-part burden-shifting framework is a 'judge-made rule' that lacks any basis in the text of Title VII, creates 'outsized judicial confusion' by requiring courts to maintain 'artificial' categories of evidence, and ultimately demands too much of plaintiffs at summary judgment." *Id.* at *7 (quoting *Ames*, 145 S. Ct. at 1551 (Thomas, J., concurring)).

> "[L]itigants and lower courts are free to proceed without the *McDonnell Douglas* framework. This Court has never required anyone to use it. And, district courts are well equipped to resolve summary judgment motions without it. Every day—and in almost every context except the Title VII context—district courts across the country resolve summary judgment motions by applying the straightforward text of Rule 56. In my view, it might behoove courts and litigants to take that same approach in Title VII cases."

*Ames*, 145 S. Ct. at 1555 (Thomas, J., concurring).

> Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

"Without relying on the *McDonnell Douglas* framework, an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference

6

of retaliatory intent." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310–11 (11th Cir. 2023). "Some of our precedents refer to this evidentiary approach as the 'convincing-mosaic framework.'" *Id.* But a 'convincing mosaic' is a metaphor, not a legal test and not a framework. *Id.* (citing *Ortiz*, 834 F.3d at 764–65). "The legal standard—and the question for the court at summary judgment—is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee." *Id.* "That legal standard applies no matter how an employee presents her circumstantial evidence." *Id.*

> Employees are not limited in the kinds of circumstantial evidence they may present. We have identified three nonexclusive categories of circumstantial evidence that can raise a reasonable inference of unlawful conduct: evidence of suspicious timing, ambiguous statements, or other information from which unlawful intent may be inferred; evidence of systematically better treatment of similarly situated employees; or evidence that the employer's justification for its action is pretextual.

*Id.* (citing *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022)). "Whatever form the evidence takes, 'so long as [it] raises a reasonable inference' that the employer retaliated against the employee, 'summary judgment is improper.'" *Id.* (citing *Lockheed-Martin*, 644 F.3d at 1328).

## II. FACTUAL BACKGROUND

In June 2021, Jiang applied for the position of AB Jewell Water Treatment Plant Superintendent at pay grade EX-44. **APP. Vol. V, 1127.** The job description,

7

at that time, required graduation from an accredited college or university with a bachelor's degree in engineering technology, environmental or biological sciences, or a related field, and five years of progressively responsible experience in water or wastewater treatment. **APP. Vol. II at 566-567; Vol. V at 1128.** That job description had just been reviewed and modified in April 2021, leaving the educational requirements in place. **APP. Vol. II at 566-567; Vol. V at 1128.**

The City's competitive process begins with certification by the Personnel Director. Certification determines whether applicants meet the minimum requirements for the position, including education, licenses, and experience. **APP. Vol. I at 0041-42; Vol. II at 321.** Certification does not mandate selection by the appointing authority. **APP. Vol. I at 0042; Vol. II at 299.**

In June 2021, the Personnel Director certified three candidates for Superintendent: Hua Jiang (Senior Engineer, EX-44), John Curry (Maintenance Supervisor), and Dylan Hutchcraft (Operations Supervisor). **APP. Vol. I at 0043; Vol. V at 1128**. Mr. Jiang held a Ph.D. in environmental engineering, an ODEQ Class A Water license, and a Professional Engineer license, and had served as a City engineer since 2010 (Senior Engineer since 2012). **APP. Vol. I at 0043–0044; Vol. V at 1187-1189.** Mr. Curry reported approximately 60 college credit hours, an ODEQ Class A Water license, and maintenance leadership experience. **APP. Vol. I at 0043–0044; Vol. V at 1187-1189.** Mr. Hutchcraft reported approximately 66

college credit hours, largely in criminal justice, an ODEQ Class A Water license, and operations supervision experience. **APP. Vol. I at 00043–0044; Vol. V at 1187-1189.**

A written test was given to each candidate but not scored. **APP. Vol. V at 1129; 1183.** A three-member panel interviewed the candidates on June 28, 2021, and scored the candidates based on interview questions. **APP. Vol. V at 1129; 1183.** Neither the tests nor interview scores were outcome-determinative. **APP. Vol. V at 1129; 1183.** Ms. Hunter was the ultimate decision-maker in her discretion. **APP. Vol. II at 559.** The City notified Mr. Jiang on June 30, 2021, that he was not selected. **APP. Vol. I at 46; Vol. III at 791-792** Mr. Jiang filed a grievance alleging violations of City policy and discrimination, which Human Resources denied. Jiang appealed to the CSC. **APP. Vol. I at 46; Vol. III at 791-792.** On August 12, 2021, the CSC determined the City did not follow its policies and procedures in certifying Hutchcraft and Curry to apply because they did not meet the educational requirements in the job description. **APP. Vol. III at 802-804.**

After the CSC's determination, HR revised the Superintendent job description. **APP. Vol. III at 805-809.** The revision removed the bachelor's degree requirement and substituted much lower and unrelated credit-hour thresholds. **APP. Vol. III at 808-809.** The revision perfectly fits to allow Curry and Hutchcraft to certify again for the position. The City justified revising the job description "to better

9

meet the needs of the Water and Sewer Department by expanding the training and experience minimum requirements and reflect the previous practice of the City of Tulsa." **APP. Vol. I at 0047.** The change also produced an internal inconsistency: the subordinate supervisor position job description now maintained higher education requirements than the superior Superintendent role. **APP. Vol. V at 1120-1121; 1130; 1180-1182; 1211-1212.**

The City certified the same three candidates under the revised job description. **APP. Vol. I at 47; Vol. II at 0321-323; Vol. V at 1129-1131.** The City conducted a second round of interviews on September 29, 2021. **APP. Vol. I at 0047-49; Vol. V at 1129-1131.** The panel included Ms. Hunter, Mr. Vaughan, and Ms. Brown. **APP. Vol. I at 0049; Vol. V at 1129-1131.** Ms. Hunter testified that scores were not outcome-determinative. **APP. Vol. I at 0049; Vol. II at 0490-491; 0559; Vol. V at 1129-1131.** Ms. Hunter exercised final selection authority and selected Mr. Hutchcraft. **APP. Vol. II at 0559.** The City notified Mr. Jiang of the selection on October 8, 2021. **APP. Vol. II at 0050; Vol. V at 1042-1046.**

Witnesses from the City testified that the job description revision was unnecessary and lacked business justification. **APP. Vol. V at 1120-1121; 1130; 1180-1182; 1211-1212.** Management had reviewed this description shortly before the first posting of the Superintendent job and retained the degree requirements. **APP. Vol. II at 566-567; Vol. V at 1128; 1179.** The decision maker, Ms. Hunter,

10

testified that HR did not consult her and that she saw no operational reason to lower the education requirement for this EX-44 Superintendent role. **APP. Vol. V at 1120-1121; 1130; 1180-1182; 1211-1212.** Jo Brown testified that EX-44 level supervisors should have college degrees, that the change made no business sense, and that she would not have participated had she known of the revision. **APP. Vol. V at 1130-1131; 1197-1199.** Eric Lee, a Director, testified it was not appropriate to change a job description to allow a non-degree applicant to certify and that management had not discussed removing degree requirements. **APP. Vol. V at 1130-1131; 1208-1210.**

Mr. Jiang filed a second grievance. **APP. Vol. V at 1042-1046.** HR denied the grievance, and on January 13, 2022, the CSC affirmed that the City had followed its policies in connection with the second round under the revised job description. **APP. Vol. V at 1047-1051.**

## II. PROCEDURAL HISTORY

Mr. Jiang transmitted a Charge of Discrimination to the EEOC by overnight delivery. His FedEx receipt shows shipment on November 17, 2021, and delivery on November 18, 2021. **App. Vol. V at 1200–01**. The charge alleged discrimination based on race, national origin, and age, and retaliation, arising from repeated failures to promote. **App. Vol. V at 1201–04**. The district court acknowledged Mr. Jiang

11

supplied sufficient evidence of the November 2021 filing when assessing the timeliness of Mr. Jiang's Charge. **App. Vol. V at 1268–69**.

After exhausting his administrative remedies, Mr. Jiang filed his Petition in the Tulsa County District Court on June 2, 2023, asserting Title VII and OADA discrimination and retaliation and ADEA claims **App. Vol. I at 0013; Vol. V at 1268–69**. The City removed the action to the Northern District of Oklahoma on June 26, 2023. **App. Vol. I at 0001–02, 0008**. The District Court dismissed Mr. Jiang's Equal Pay Act claim without prejudice. **App. Vol. I at 0002**.

After discovery, the City moved for summary judgment (Dkt. 45), Mr. Jiang opposed on January 28, 2025 (Dkt. 53) and the City replied on February 11, 2025 (Dkt. 55). **App. Vol. I at 0002-0003; 0037; Vol. V at 1107; 1250.** On June 2, 2025, the district court entered its Opinion and Order granting the City's motion (Dkt. 56) and contemporaneously entered Judgment (Dkt. 57) **App. Vol. V at 1262; 1284**. Mr. Jiang filed a Notice of Appeal on June 13, 2025 (Dkt. 58). **App. Vol. V at 1285.**

## SUMMARY OF THE ARGUMENT

The District Court erred in granting the City summary judgment on Jiang's discrimination and retaliation claims by misapplying the applicable Rule 56 standard, misapplying the *McDonnell Douglas* framework as substantive elements Jiang was required to prove at summary judgment, and for viewing all reasonable

12

inferences from the record in the City's favor. The District Court viewed the record in isolation, thereby discounting troubling evidence of pretext, crafting a business justification on the City's behalf, and requiring Jiang to prove pretext-plus for his claims to survive.

Jiang provided substantial evidence that the City's justification for his non-selection for a promotion was pretext. Jiang successfully challenged his first non-selection to the Civil Service Commission (CSC), which found the City failed to follow its own policies. Rather than award the position to the only qualified candidate (Jiang) or open the process to outside applicants, as policy allowed, the City's Human Resources (HR) revised the job description to remove specific degree requirements that allowed two unqualified, white, and younger applicants to apply a second time. Managers testified there was no business reason to lower the education requirements for this EX-44 level superintendent role. Indeed, the amendment created an unjustifiable anomaly of a subordinate position demanding more formal education than the Superintendent. Second, Jiang submitted substantial evidence that the selection process was wholly subjective. A test was administered but not scored; the panel's scoring matrix was not outcome-determinative and scores varied widely; and the final decision rested with Hunter's subjective discretion. Finally, Jiang presented substantial evidence he was greatly more qualified. Jiang was the only applicant with the requisite educational requirement; he had a PhD in the required

13

field of study while the two other candidates did not even have accredited college-level coursework in the required subjects, much less a degree. Taken together, these facts permit a reasonable finding that the City's explanation is unworthy of credence.

The District Court erred in its analysis of Jiang's retaliation claim by ignoring that the second denial of the promotion is a legally sufficient adverse employment action. The District Court also failed to analyze whether the HR-driven amendment to the job description, opening the door for a second round of applications, would dissuade a reasonable employee from engaging in protected activity. The District Court required Jiang to show he was actually deterred from challenging the City's actions, a standard that clearly can never be met as there would be no lawsuit.

The District Court applied the *McDonnell Douglas* framework in a manner at odds with the standards of Rule 56 by crafting a justification for the City and weighing competing evidence. This Circuit should cease employing the *McDonnell Douglas* framework in favor of a totality of the circumstances standard that aligns with Rule 56. When the record is viewed as a whole, and in the light most favorable to Mr. Jiang, a reasonable jury could infer discrimination and retaliation. The grant of summary judgment should be reversed.

**STANDARD OF REVIEW**

"We review a district court's grant of summary judgment de novo, using the same standard applied by the district court pursuant to Fed.R.Civ.P. 56(a)." *Walkingstick Dixon*, 125 F.4th at 1333 (quoting *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013)). "We will affirm a grant of summary judgment if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing Fed. R. Civ. P. 56(a)). "We 'view facts in the light most favorable to the non-mov[ants] ..., resolving all factual disputes and reasonable inferences in their favor." *Id.* (quoting *Cillo*, 739 F.3d at 461 (quotations omitted in original)).

**ARGUMENT**

**I. THE RECORD WOULD ALLOW A REASONABLE JURY TO FIND PRETEXT.**

The City did not argue that Plaintiff cannot make a prima facie case of race and age discrimination under the *McDonnell Douglas* framework. Instead, the City claimed Mr. Jiang was passed over because Hunter was lucky to be able to choose between three qualified individuals, and Jiang had proven to be difficult to work with and unwilling to compromise with outside contractors. **App. Vol. I at 0057-0058.** Jiang presented substantial circumstantial evidence in compliance with the

15

*McDonnell Douglas* framework that the City's business justification was a pretext for discrimination. **App. Vol. V at 1132-1135.**

### A. Procedural Irregularities.

The City wrongfully certified two white and younger candidates who did not meet the educational requirements of the job description for the Superintendent role. **App. Vol. III at 0802-804.** At the time of the first administered test and interviews, Jiang was overwhelmingly more qualified as neither Curry nor Hutchcraft could meet the educational requirements, while Jiang had a PhD in the required field. *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1297 (D.C. Cir. 1998)(Noting the great disparity between a master's degree in the relevant field versus a candidate with no college degree). **App. Vol. III at  0802-804.** The CSC agreed with Jiang that the City did not follow its policies and procedures in certifying the June 2021 candidates. **App. Vol. III at 0802-804.** City policy prohibits any substitution of the educational requirements where specific degrees or coursework are required under the job description. **App. Vol. II at 0318.**

The City argued that its certification decision reflected past practice based upon nothing more than the conclusory statement in the affidavit of Felix-Warren. **App. Vol. I at  0047; Vol. II at 0321-0323.**  The City also lauded that it amended its policies to reflect past practice. However, the prohibition on substitution of

16

experience for education in cases of specific degree requirements remained intact. **App. Vol. V at 1173-1174 at (2).** The record only shows the City deviated from its written policies in this case to the benefit of two white and younger candidates and to the disadvantage of Jiang, the only qualified candidate. A jury could reasonably infer pretext from this inconsistency. '[F]or an inference of pretext to arise on the basis of a procedural irregularity, ... there must be some evidence that the irregularity 'directly and uniquely disadvantaged a minority employee.' *Conroy v. Vilsack*, 707 F.3d 1163, 1176 (10th Cir. 2013)(quoting *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1213 (10th Cir. 2010)(quoting *Randle v. City of Aurora*, 69 F.3d 441, 454 n. 20 (10th Cir.1995)).

Because the City policy was clear, HR had to rewrite the job description to lower the educational requirements to ensure Hutchcraft and Curry could certify for the position again. The City's excuse for amending the job description was "to better meet the needs of the Water and Sewer Department by expanding the training and experience minimum requirements and reflect the previous practice of the City of Tulsa." **App. Vol. I at 0047; Vol. II at 0321-323.** However, multiple managers testified the rewrite made no business sense, that Ex-44 supervisors should have college degrees, and they found it unjustifiable that now a subordinate supervisor had to have higher educational qualifications than the Superintendent. **APP. Vol. II**

**at 566-567; Vol. V at 1120-1121; 1128; 1130-1131; 1179-1182; 1197-1199; 1208-1212.**

The District Court did not address the tension between HR's excuse of reflecting past practice with the testimony of management-level employees involved in the interviews that amending the job description had no business justification. Instead, the District Court speculated for the City that amending the job description was to expand the pool of applicants. **APP Vol. V at 1276;** *Jenny,* 144 F.4th at 1199 ("But this type of judicial guesswork is the very antithesis of the 'conclusive[ ]' evidence the first *Reeves* scenario contemplates.")(quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105 (2000)). The City never made this argument and City policy provided just such a means by opening the application process to outside applicants. **APP Vol. V at 1155.** The District Court went against the Rule 56 standard that all inferences are to be drawn in the light most favorable to Jiang.

The District Court also improperly required Jiang to prove pretext-plus, stating "Plaintiff has not identified any comments by co-workers or other incidents suggesting that he was subjected to mistreatment because of his race or age." **APP Vol. V at 1276;** *Jenny,* 144 F.4th at 1198 ("the 'Court rejected the so-called "pretext plus" standard that required plaintiffs ... to both show pretext and produce 'additional evidence of discrimination.'")(quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d

18

1273, 1280 (10th Cir. 2010); *Reeves*, 530 U.S. at 146, 120 S.Ct. 2097)). The District Court wholly ignored the testimony of Jo Brown that she felt targeted to be on the second panel and that she would not have participated if she had been told about HR's unilateral rewriting of the job description. Brown also testified that HR should have found themselves at fault in response to Jiang's second complaint, claiming the rewriting of the job description was discriminatory. **APP Vol. V at 1130-1131; 1193-1199.**

**B. Subjectivity in the Selection Process.**

The District Court found the promotion selection process was not sufficiently subjective because the second interview panel used 14 questions and a scoring matrix to rank the applicants. **APP Vol. V at 1274-1275.** However, the District Court made no mention that the scores were not outcome-determinative, that Ms. Hunter had ultimate decision-making authority in her discretion, nor did the District Court discuss that the great disparity in interview scores draws into question its objectivity. **APP. Vol. II at 0559; Vol. V at 1129; 1183.** In the second round, Hunter scored Jiang at a 3.775 of out 5, Vaughn scored Jiang at 4.0, and Jo Brown scored Jiang at 1.725. Hunter admitted Brown's score was too low. Brown herself stated she scored the candidates based solely on their interview style. **APP. Vol. V at 1121-1124, 1267-1268.**

19

"[A]lthough employers may of course take subjective considerations into account in their employment decisions, courts traditionally treat explanations that rely heavily on subjective considerations with caution." *Aka* , 156 F.3d at 1298; accord *Garrett*, 305 F.3d at 1218 ("Courts view with skepticism subjective evaluation methods such as the one here.")(see also cases cited therein). As in *Garrett*, there were no guardrails in place and no oversight constraining Hunter's unfettered discretion in choosing a candidate. Hunter's decision was based on her own subjective feeling about leadership ability. **APP Vol. V at 1183.** Hunter discounted Jiang's leadership ability because four (4) years prior, a contractor did not accept Jiang's decision on a project and went above his head to complain. **APP Vol. II at 499-507.** Hunter could not provide any complaints about Jiang from the employees he would be supervising. **APP Vol. II at 507.** Vaughn was personally contacted in that situation and still ranked Jiang the highest. **APP Vol. III at 864-867.** Hunter's decision-making was clearly subjective.

### C. Jiang's Qualifications.

Jiang's superior qualifications further show pretext.  "Particularly in cases where a jury could reasonably find that the plaintiff was otherwise significantly better qualified than the successful applicant, an employer's asserted strong reliance on subjective feelings about the candidates may mask discrimination." *Aka*, 156 F.3d

at 1298. It is undisputed Jiang was the only qualified candidate for the position prior to HR's unilateral amending of the job description. **APP. Vol. III at 0802-804.** Being the only qualified candidate under the job description must surely equate to being overwhelmingly more qualified. Jinag's PhD in the required field is overwhelmingly more significant than the other candidates, who not only lacked a degree at all, but also did not have any relevant coursework. **APP. Vol. I at 0043–0044; Vol. V at 1187-1189**

It is because of this great disparity that HR's only option to keep Jiang from the position was to amend the job description. The amendment served no legitimate business purpose other than to favor two white and younger applicants. Even after the amendment to the job description, Mr. Jiang still had overwhelming technical credentials, and Jiang had served at the EX-44 level for nine (9) years while the other candidates had never served at that level. The only evidence for finding Jiang is not overwhelmingly more qualified is Hunter's subjective belief of Hutchcraft's superior leadership abilities. A reasonable jury could certainly infer discrimination where HR had to go to such lengths to keep Jiang from the promotion. The District Court erred by weighing the evidence and finding for the City, rather than letting a jury decide if a PhD versus no relevant coursework (much less a degree) is an overwhelming disparity raising an inference of pretext.

**D. The Totality of the Circumstances raises an Inference of Discrimination.**

The District Court only analyzed Jiang's pretext arguments in isolation, finding each argument failed to prove pretext in and of itself. **APP Vol. V at 1274-1278.** The District Court also faulted Jiang for failing to make a pretext-plus showing of additional racial comments. **APP Vol. V at 1276.** The District Court surely considered itself bound to the *McDonnell Douglas* framework under this Circuit's precedents. **APP Vol. V at 1271-1272.** However, the District Court's opinion is a classic example of the "hyper-fixation on pretext" that "ultimately demands too much of plaintiffs at summary judgment." *Jenny*, 144 F.4th at 1202 (quoting *Ames*, 145 S. Ct. at 1548 (Thomas, J., concurring)).

Jiang presented his three categories of pretextual evidence together as a totality of the circumstances. **APP Vol. V at 1132-1135.** The District Court expressly denied this method in Jiang's retaliation claim, finding Jiang "is trying to prove retaliation in a manner similar to a hostile work environment theory." **APP. Vol. V at 1282**. On the contrary, Jiang presented his evidence as a totality of the circumstances. **APP. Vol. V at 1131 (Fact 25); 1132-1135; 1217-1246; 1247-1249.**

The concurrence in *Jenny* emphasizes that Rule 56 requires consideration of the entire record, viewed in the light most favorable to Jiang, to determine if a reasonable jury could infer intentional discrimination. Jiang suggests this Circuit

entirely throw out *McDonnell Douglas*, as suggested by Justices Thomas and Gorsuch in *Ames*, and simply evaluate all evidence "as a whole," *Berry*, 84 F.4th at 1316 (Abudu, J., concurring)(quoting *Ortiz*, 834 F.3d at 765); *Ames*, 145 S. Ct. at 1555, ("This case did not present the question whether the *McDonnell Douglas* framework is an appropriate tool for evaluating Title VII claims at summary judgment. In a case where that issue is squarely before us, I would consider whether the framework should be used for that purpose." "In the meantime, litigants and lower courts are free to proceed without the *McDonnell Douglas* framework. This Court has never required anyone to use it." "In my view, it might behoove courts and litigants to take that same approach in Title VII cases.").

As the concurrence in *Berry* describes, other circuits have attempted to employ an alternative to *McDonnell Douglas* in the "convincing mosaic" approach, but even that approach has devolved into a confusing malaise with the pretext hurdle. *Berry*, 84 F.4th at 1316 (Abudu, J., concurring). This Circuit should adopt a totality of the circumstances standard consistent with Rule 56 and find Jiang has raised an inference of discrimination based upon the entire summary judgment record.

## II. JIANG'S RETALIATION CLAIM PRESENTS TRIABLE ISSUES.

### A. Adverse Employment Action.

The District Court faulted Jiang for not providing more briefing on his list of retaliatory instances (**APP Vol. V at 1247-1249),** but instead, only providing the citations to his deposition wherein he testified to that list **(APP Vol. V at 1217-1246).** The District Court erred by requiring Plaintiff to prove each of these "discreet acts" independently caused a "concrete effect on his employment." **APP Vol. V at 1282.** Title VII contains no language requiring Plaintiff to prove any "discrete acts." 42 U.S.C.A. § 2000e-3("It shall be an unlawful employment practice for an employer to discriminate against any of his employees [] because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). "Discrete acts" are only relevant to determining the timeliness of a charge filed with the EEOC, not for finding retaliation occurred on the merits under Rule 56. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002)("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

The District Court further found that amending the job description had no effect on the terms or conditions of Jiang's employment. **APP Vol. V at 1282.** As a

24

matter of law, denial of a promotion can be retaliation. **APP Vol. I at 0061;** *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998)("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

The uncontroverted evidence shows HR took this action unilaterally, without any business justification, and that Jiang was again denied the promotion because the educational requirements were tailored specifically to the two white and younger applicants. The City and HR certainly did not take any actions to make the promotion decision more in Jiang's favor. Indeed, Brown testified she felt purposefully selected for the second panel because she would not select Jiang. **APP Vol. V at 1130-1131; 1193-1199.** The rewriting of the job description (August 26, 2021) and the second denial of Jiang's promotion (October 8, 2021) occurred in close proximity to Jiang's first grievance (June 2021), which included a complaint of race discrimination. This temporal proximity is sufficient to infer causation and intentional retaliation by HR and Hunter.

The District Court also found that Jiang was not actually dissuaded from making future complaints about discriminatory conduct. **APP Vol. V at 1282.** The District Court made no analysis of whether a reasonable person would be deterred

by HR's unilateral actions of amending the job description. Retaliation asks whether the employer's action would dissuade a "reasonable person" from "making or supporting a charge of discrimination"—a broader standard the District Court acknowledged yet did not apply faithfully. *Culp v. Remington of Montrose Golf Club, LLC*, 133 F.4th 968, 977 (10th Cir. 2025).

By erasing the very educational requirements Jiang relied on and reopening the application process under lower educational requirements, the City's action tells every employee that you may win the first round at the CSC but they will find a backdoor to discriminate anyhow- a message that says you cannot win so do not make any complaints. The rewrite followed immediately on the CSC determination, was driven by HR (the same actor whose certification conduct the CSC criticized), and managers testified it lacked business justification. That temporal and contextual evidence supports causation and pretext.

### B. Pretext.

The District Court noted that neither party offered a separate pretext argument but concluded the City had made an explanation for selecting another candidate over Jiang. **APP. Vol. V at 1282-1283.** Jiang clearly argued that HR unilaterally amended the job description in retaliation for his complaints. **APP. Vol. V at 1136.** The District Court made no separate analysis of HR's amending the job description.

Assuming the District relied on its previous finding, that finding was created solely by the District Court- the City did not argue in its briefing the amendment was made to widen the applicant pool. **APP Vol. II at 0323** ("the job description for the Treatment Plant Superintendent position was updated to better meet the needs of the Water and Sewer Department by expanding the training and experience minimum requirements and reflect the previous practice of the City of Tulsa.").

The District Court supplied the argument that the City sought to widen the applicant pool and cited *Conroy* to justify ignoring these procedural irregularities. *Conroy* is distinguishable factually because the defendant in that case had actual testimony from the "the head of the Region 4 group where the new position would be located, wanted 'as large and diverse an applicant pool as possible' and felt that 'some of the unnecessary qualifications for the position'—particularly, an overemphasis on technical skills—'were arbitrarily restricting the applicant pool.'" *Conroy*, 707 F.3d at 1179. The defendant in *Conroy* also had testimony that the "'viable options' [under its policies] included relisting a vacancy announcement with revised qualification standards and that it was common practice for the agency to do just that.'" *Id.* at 1180.

Again, no witness from the City testified that the Water and Sewer Department requested the job description amendment, that the amendment made any business sense, nor that it was a regular practice for HR to unilaterally change job

27

descriptions. A reasonable jury could certainly find the City's actual proffered excuse (to meet the needs of the Water and Sewer Department) as pretext for retaliating against Jiang for challenging his non-selection on grounds of racial discrimination.

## CONCLUSION

The District Court's Order granting summary judgment to the City is an example of the *McDonnell Douglas* framework supplanting Title VII's substantive elements and inapplicability in the summary judgment context. The District Court demanded too much of Jiang at the summary judgment stage and failed to view the facts and inferences in the light most favorable to Jiang. This Court should uverrule its adoption of the *McDonnell Douglas* framework. The judgment should be reversed. This Court should remand this case for trial on Mr. Jiang's Title VII, OADA, and ADEA disparate-treatment and retaliation claims.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument will assist the Court in navigating the record of policy deviations, the CSC ruling, the sequence and substance of the job-description rewrite, and the interview-scoring anomalies underlying pretext and retaliation. See district court's final judgment and statement of the issues above.

## CERTIFICATE OF DIGITAL SUBMISSION

The undersigned hereby certifies that this Appendix as submitted in Digital Form is an exact copy of the written document filed with the Clerk, that no privacy redactions were required and the digital submission has been scanned for viruses with AVG Anti-Virus Free Edition Software and is free from viruses.

/s/ Mark A. Smith
Mark A. Smith

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

/s/ Mark A. Smith
Mark A. Smith

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HUA JIANG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-CV-255-CVE-CDL** |
| | ) | |
| **CITY OF TULSA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>OPINION AND ORDER</u>**

Now before the Court is Defendant City of Tulsa's Motion for Summary Judgment and Brief in Support (Dkt. # 45). The City of Tulsa (the City) seeks summary judgment on plaintiff Hua Jiang's employment discrimination claims under federal and state law. Plaintiff's employment discrimination claims are based on a failure to promote theory, and the City argues that plaintiff has failed to show that he was so substantially more qualified than the other job applicants that it creates an appearance of workplace discrimination. Dkt. # 45. Plaintiff responds that he should have been considered the only qualified applicant for the position, and the City's efforts to minimize the job requirements to allow less qualified younger and white applicants to qualify for the position shows that the City's stated reason for denying him the position was pretextual.

**I.**

Jiang has worked for the City since 2010, and he is currently employed as a senior engineer in the water and sewer department of the City. Dkt. # 45-1, at 14-15. Jiang was originally classified as a professional engineer at level EX-40 on the City's pay scale, and he has been a senior engineer at level EX-44 since 2012. Id. at 16. Jiang's duties have remained similar throughout his

**APP. 1262**

employment with the City, and he broadly provides technical support for the operation of water treatment plants. Id.

The City charter requires that "[a]ll original appointments and promotions to positions in the classified service shall be based upon competitive procedures." Dkt. # 45-2, at 2. When a person applies for original appointment or a promotion, the City's personnel director must initially certify that the applicant meets the minimum requirements for the position, which can include education and work experience. Dkt. # 45-4, at 1. The City's personnel policies and procedures provide guidance for the consideration of education as a factor for employment or promotion, and the City has the discretion to consider experience in lieu of education in certain circumstances. Dkt. # 45-3, at 24. However, experience may not be substituted for education "for positions with specific degree requirements of positions that require specific course work." Id. Prior to August 2021, the City allowed applicants to substitute years of experience for years of education at a one to one rate, as long as the applicant had half of the required education required for the position. Id. Certification is a preliminary process for the personnel director to make an initial determination as to which applicants meet the qualifications for a position, and certification does not require the appointing authority to hire a particular applicant. Id. at 10.

In June 2021, Jiang applied for a job opening for the water treatment plant superintendent of the AB Jewell Water Treatment Plant. Dkt. # 45-1, at 94; Dkt. # 53-4. The position would not have provided Jiang a pay raise, but he believed the position would have provided him valuable managerial experience that would help open up other career prospects. Dkt. # 45-1, at 51-52. The job posting provided the following description of the necessary educational qualifications and jobs skills:

**APP. 1263**

> Training and Experience: Graduation from an accredited college or university with a bachelor's degree in engineering technology, environmental/biological sciences, or a related field and five (5) years of progressively responsible experience in the operation of a water treatment plant; or an equivalent combination of training and experience per Personnel Policies and Procedures, Section 128. Certification as an engineering intern can be substituted for one year of experience.
>
> Knowledge, Abilities, and Skills: Considerable knowledge of the principles, practices, and techniques involving water or wastewater treatment; considerable knowledge of technology utilized in treatment plant operations and maintenance; considerable knowledge of engineering design problems and troubleshooting techniques in a treatment plant; and considerable knowledge of local, state and federal requirements governing treatment plant processes and compliance. Ability to effectively supervise and develop the subordinate personnel; ability to maintain records and organize data to report to management and to make recommendations for improved operations; ability to effectively train and provide employees with the necessary tools to successfully perform their job duties; and the ability to utilize the highest level of interpersonal skills to understand, select, develop, and motivate people at any level within or outside the organization.

Dkt. # 45-7, at 2. Jiang, John Curry, and Dylan Hutchcraft were certified by the personnel director as candidates for the water treatment plant superintendent position. Dkt. # 45-6, at 39-40.

Jiang holds a Ph. D in environmental engineering from the University of Missouri-Rolla. Dkt. # 45-10, at 3. Jiang's application listed his employment with the City as a senior engineer, and he also had prior employment as a process engineer and laboratory director prior to beginning his employment with the City. Id. at 6-7. John Curry had been the maintenance supervisor for the AB Jewell Water Treatment Plant since 2014, and he claimed that he managed a ten member team "to maintain rotating machinery, electrical systems, instrumentation, plumbing, HVAC, and SCADA related equipment." Dkt. # 45-8, at 4. However, he did not have a bachelor's degree and had completed 60 credit hours at Tulsa Community College. Id. at 3. Dylan Hutchcraft had been a treatment plant operations supervisor at the Mohawk Water Treatment Plant since May 2020, and he had previously worked as a treatment plant operator. Dkt. # 45-9, at 4. Hutchcraft served in the

3

**APP. 1264**

National Guard, and he had completed 66 credit hours at Southern New Hampshire University.  Id. at 3.  The personnel director certified Jiang, Curry, and Hutchcraft for the water treatment plant superintendent position, even though Curry and Hutchcraft did not satisfy the educational requirement for the position.  Dkt. # 45-4, at 2.  The City claims that it had a policy of substituting one year of experience for one year of education as long as the candidate met half of the educational requirement for a position, and Curry and Hutchcraft were certified under this policy.  Id.

The water supply systems manager, Stefanie Hunter, assembled an interview panel consisting of Eric Lee, Joan Gausvik, and herself, and the interviews took place on June 28, 2021.  Dkt. # 45-6, at 50-51.  Each interviewer provided a score of up to 40 points per candidate, consisting of up to 5 points in eight separate categories.  Dkt. # 45-11, at 2.  Jiang received high scores from each of the interviewers on his educational and technical qualifications for the position, but he received much lower scores in the categories of verbal communication and interpersonal skills.  Hunter noted that Jiang had excellent technical skills, but it seemed he needed better communications skills and additional managerial experience before he would be ready for the position of water treatment plant superintendent.  Id. at 5.  Lee's scores and remarks were consistent with Hunter's opinions, and Gausvik noted that she expected Jiang to have more "concrete recommendations and ideas for improvement."  Id. at 1, 8.  Jiang received a total of 83 points from the interview panel.  Curry received low scores for educational qualifications, but he was generally scored higher for his interpersonal skills and enthusiasm for the position.  Id. at 3, 7, 10.  Curry received a total of 81 points from the interview panel.  Hutchcraft received the highest score from each member of the interview panel.  Hutchcraft's scores were lower for his educational qualifications for the job, but each panel member found that he had significant managerial experience and strong communication

4

**APP. 1265**

and interpersonal skills.  Id. at 2, 6, 9.  Hutchcraft received a total of 88 points from the interview panel.

Hunter was the ultimate decision maker as to the selection of the water treatment plant superintendent, because the position would report to her.  Dkt. # 45-15, at 1.  Hunter selected Hutchcraft for the position and Jiang was notified on June 30, 2021, and thereafter Jiang filed a grievance challenging the decision.  Dkt. # 45-14.  Jiang claimed that he was "more educated, more experienced and more qualified" than Hutchcraft, and Jiang alleged that he had repeatedly been denied promotions due to racial discrimination in the selection process.  Id. at 2.  The City's human resources department rejected Jiang's grievance, and Jiang appealed the decision to the Civil Service Commission (the Commission).  Dkt. # 45-15, at 2.  In August 2021, the Commission investigated Jiang's allegations that the City failed to follow its own written policies on the substitution of experience for education, and the Commission separately considered Jiang's allegations of racial discrimination.  Id.  The Commission concluded that "the City did not follow Section 114.2 of the Personnel Policy and Procedures Manual on Certification; specifically, as to the application of qualification and the current job description as written and the application of Section 128 of the Personnel Policy and Procedures Manual."  Dkt. # 45-16, at 2.

The City's personnel director states that the City thereafter changed its policies on August 26, 2021 to reflect its past practices, and the City also revised the job description for the treatment plant superintendent position.  Dkt. # 45-4; Dkt. # 45-17.  The "knowledge, abilities, and skills" section remained unchanged from the previous job listing, but the training and experience requirements were modified as follows:

**APP. 1266**

> Training and Experience: Completion of 120 hours from an accredited college or university and five (5) years of experience in a field relevant to the essential tasks of this job description or completion of 60 hours from an accredited college or university and seven (7) years of experience in a field relevant to the essential tasks of this job description. Certification as an engineering intern can be substituted for one year of experience.

Dkt. # 45-17, at 2. The job description no longer required a degree in the specific fields of engineering technology, environmental biological sciences, or a similar field, and the educational requirements could also be satisfied by 60 hours of general college credits and seven years of relevant experience. Both Hutchcraft and Curry could meet the educational requirements for the revised job description.

In September 2021, the personnel director again certified Jiang, Hutchcraft, and Curry as applicants for the AB Jewell water treatment plant superintendent position. Dkt. # 45-4, at 3. The second interview panel consisted of Hunter, Matt Vaughan, and Jo Brown. Vaughan was the water pollution control manager for the City at the time of the interview, and Brown was the City's water quality assurance manager. Dkt. # 45-18, at 9; Dkt. # 45-21, at 7. The interviews were scored on a scale with a maximum score of 5.0. Vaughan rated Jiang the highest out of the three applicants with a score of 3.87, even though Vaughan was aware of a complaint from a consultant who had a difficult time working with Jiang. Dkt. # 45-20, at 3. Vaughan gave Hutchcraft a score of 3.325, and Curry received a score of 3.0 from Vaughan. Dkt. # 45, at 12; Dkt. # 53, at 15. Hunter rated Hutchcraft the highest with a score of 4.15, and she found that Hutchcraft had a "big advantage" over the other candidates in terms of managerial experience and leadership. Dkt. # 45-20 at 8. Hunter gave Curry a score of 3.725, and she scored Jiang the lowest out of the three candidates at 3.375. Dkt. # 45, at 13; Dkt. # 53, at 17. Brown gave Curry and Hutchcraft very similar scores of 3.375 and

**APP. 1267**

3.325 respectively, but Jiang received a much lower score of 1.725 from Brown. Brown felt that her scores reflected who she thought was the best candidate and, even though she had previously worked with all three candidates, her interview scores solely reflected her evaluation of the candidates' interview responses. Dkt. # 45-21, at 68-69. Hunter felt that Brown's scoring of Jiang was too low, but Hunter acknowledged that Jiang often talked in circles and did not provide concrete examples to support his explanations. Dkt. # 45-6, at 166-67.

Hunter had final decision making authority for the water treatment plant superintendent position, and she selected Hutchcraft as the best all-around candidate. Id. at 164-65, 233. She found that Jiang had strong technical abilities and Curry had leadership ability, but Hutchcraft was more even across multiple qualifications for the position. Id. at 164. Jiang acknowledges that it is "pretty common" for an operations supervisor to move into the plant superintendent position. Dkt. # 1, at 55. Jiang has declined to apply for a position as an operations supervisor to gain additional experience, because he would view that as a demotion and an insult. Id. Upon learning of Hutchcraft's selection for the job, Jiang filed a second grievance challenging his non-selection, and the grievance was heard by the Commission on January 13, 2021. Dkt. # 45-24. The Commission determined that City followed its personnel policies during the selection process, and Jiang's grievance was denied. Id. Jiang filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) that was signed by Jiang on November 17, 2021, but the charge states that it was received by the EEOC Chicago district office on August 5, 2022.[1] Dkt. 45-5. The

---

[1]   Plaintiff has provided evidence that he mailed the charge on November 17, 2021 and FedEx delivered the charge to an undisclosed address in Oklahoma City on November 18, 2021. Dkt. # 53-8, a 2. Plaintiff contacted the EEOC in May 2022 when he had not received any response from the EEOC about his charge, and there is sufficient evidence to support an inference that plaintiff actively attempted to file a charge well before August 5, 2022. The

APP. 1268

charge alleges that the City discriminated against Jiang based on his race, national origin, and age, and he also claims that the City retaliated against him for engaging in protected activity. Id.

On June 2, 2023, Jiang filed this case in Tulsa County District Court alleging race discrimination and retaliation claims under Title VII, as well as state law claims under the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA) under the same theories. Jiang alleges age discrimination and retaliation claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA), and he also alleged a claim under the Equal Pay Act, 29 U.S.C. § 206(d) (EPA). The City removed the case to this Court based on federal question jurisdiction. The City filed a motion to dismiss plaintiff's EPA claim, and the motion was granted without opposition from plaintiff. Dkt. ## 8, 12, 13.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored

City argues that plaintiff lacks standing to bring many of his claims based on a filing date of August 5, 2022 but, viewing the evidence in a light most favorable to plaintiff, it appears he actually filed or attempted to file his charge in November 2021. Therefore, the Court does not find that plaintiff's employment discrimination claims are time-barred to the extent that his claims were included in his November 2021 charge.

8

**APP. 1269**

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

The City argues that it has provided a legitimate, non-discriminatory explanation for its selection of another candidate for the water treatment plant superintendent position, and plaintiff has no evidence suggesting that the City's explanation was pretextual for race or age discrimination. Dkt. # 45, at 21-24. As to plaintiff's retaliation claims, the City contends that plaintiff has not suffered an adverse employment action in retaliation for engaging in protected activity, and he cannot show that the City engaged in any action with the intent to retaliate against plaintiff for engaging in protected activity. Id. at 26. Plaintiff responds that City changed the job requirements for the water treatment plant superintendent position to allow less qualified white applicants to meet the

9

requirements for the position, and this supports an inference that the City intended to discriminate against plaintiff because of his race or age. Dkt. # 53, at 27-28. Plaintiff also claims that changing the job description was itself a retaliatory act for plaintiff's filing of a successful grievance challenging the first hiring process for the water treatment plant superintendent position. Id. at 30.

**Race and Age Discrimination**

The City asserts that it had a legitimate, non-discriminatory reason for awarding the water treatment plant superintendent position to another candidate, and plaintiff cannot establish that this decision was pretextual based only on his allegedly superior qualifications for the position. Dkt. # 45, at 23-24. Plaintiff contends that the City lowered the educational requirements for the water treatment plant superintendent position to allow less qualified white applicants to qualify for certification and the City relied solely on subjective hiring criteria, and these factors support an inference that the City's explanation for awarding the position to Hutchcraft was pretext for race or age discrimination.[2] Dkt. # 53, at 27-28.

Plaintiff has no direct evidence of race or age discrimination and, in reviewing a discrimination claim based on circumstantial evidence, the Court must apply the burden-shifting

---

[2]   The Court has reviewed plaintiff's response and the evidence city by plaintiff and can find no evidence actually providing the age of Hutchcraft or Curry. Plaintiff repeatedly refers to Hutchcraft and Curry as "younger" workers, but he fails to provide evidence to support this assertion. This is a sufficient reason to grant summary judgment to the City on plaintiff's age discrimination claims. In any event, plaintiff also makes no attempt to separately analyze the City's actions in terms of alleged racial or age discrimination, and the Court's pretext analysis will be the same for plaintiff's race and age discrimination claims. For the purpose of this Opinion and Order, the Court will assume that Hutchcraft and Curry would be considered younger workers for the purpose of an ADEA claim and will follow the burden-shifting analysis for race and age discrimination claims.

framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3]   Frappied v.

Affinity Gaming Black Hawk, LLC, 966 F.3d 1038, 1056 (10th Cir. 2020) (burden shifting analysis

applies to ADEA as well as Title VII claims).   Under this framework, the plaintiff bears the initial

burden to establish a prima facie case of discrimination.   Sanders v. Southwestern Bell Telephone,

L.P., 544 F.3d 1101, 1105 (10th Cir. 2008).   To establish a prima facie case of race or age

discrimination, a plaintiff must show: (1) he is within the protected group; (2) he suffered an adverse

employment action; and (3) the challenged action took place under circumstances giving rise to an

inference of discrimination.   Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202, 1215 (10th Cir.

2022).   If the plaintiff meets his burden, the employer must "come forward with some legitimate,

non-discriminatory reason for the adverse employment action."  Hinds v. Sprint/United Management

Co., 523 F.3d 1187, 1195 (10th Cir. 2008).   If the employer produces a legitimate, non-

discriminatory reason for its decision, the burden shifts to the plaintiff "to prove by a preponderance

of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but

were a pretext for discrimination."  Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir.

2004).   The mixed-motive analysis established in Price Waterhouse v. Hopkins, 490 U.S. 228

(1989), does not apply to claims under the ADEA, and a plaintiff asserting an age discrimination

claim under the ADEA retains the "burden of persuasion to establish that age was the 'but-for' cause

of the employer's adverse action."  Gross v. FBL Financial Servs., Inc., 557 U.S. 167, 177 (2009).

At the second stage of the McDonnell Douglas analysis, the burden shifts to defendant to

come forward with a legitimate, non-discriminatory reason for its actions.  "The defendant's burden

---

[3]   Plaintiff has also alleged race and age discrimination claims under the OADA, and these
claims are subject to the same burden-shifting analysis as plaintiff's Title VII claim.  Jones
v. Needham, 856 F.3d 1284, 1292 (10th Cir. 2017).

**APP. 1272**

is merely to articulate through some proof a facially nondiscriminatory reason for the [action]; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Even if the plaintiff disputes that the defendant's stated reason was not the true reason for the adverse employment action, the burden shifts to plaintiff to show that the stated reason is pretextual as long as the defendant meets its burden to state a legitimate, nondiscriminatory reason for its actions. Plotke v. White, 405 F.3d 1092,1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004).

"A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988). In the context of an age discrimination claim, the burden of

**APP. 1273**

persuasion remains with plaintiff at all times to show that age was the but-for cause of plaintiff's termination. Smith v. City of Allentown, 589 F.3d 684, 691 (10th Cir. 2009).

The City does not contest that plaintiff can establish a prima facie case of race or age discrimination, and the Court will proceed directly to the City's legitimate, non-discriminatory explanation for failing to promote plaintiff. Dkt. # 45, at 21. The City acknowledges that plaintiff was qualified for the position of water treatment plant superintendent, but Hunter preferred to select a candidate with a range of technical skills and leadership abilities. Id. at 22. The selected candidate, Hutchcraft, did not have as much technical knowledge as plaintiff and was not as strong in management skills as Curry, but Hunter believed that Hutchcraft was strong in both areas and was a better all-around candidate. Id. This explanation satisfies the City's requirement to provide a legitimate, non-discriminatory reason for the decision to offer the water treatment plant superintendent position to Hutchcraft, and the burden shifts to plaintiff to come forward with evidence showing that the City's explanation is pretextual.

Plaintiff argues that the City violated its own policies to consider Hutchcraft and Curry for the position of water treatment plant superintendent during the initial hiring process, and plaintiff contends that he should been considered the only qualified applicant for the position. Dkt. # 53, at 27. Plaintiff relies on the City's decision to change the requirements for the job after he successfully challenged the first hiring decision, and he claims the City lowered the job requirement to favor white and younger applicants. Id. Plaintiff complains that the certification and hiring decisions were wholly subjective, and the lack of objective criteria for certifying and hiring allowed the City to favor white applicants. Id. at 28. Finally, plaintiff argues that he was vastly more qualified that Hutchcraft

**APP. 1274**

or Curry, and the decision to select a candidate other than plaintiff is sufficient on its own to establish pretext. Id. at 28-29.

Plaintiff's assertion that the hiring criteria for the water treatment plant superintendent position was "wholly subjective" is not supported by any credible evidence. During the second hiring process, each interviewer completed a form with 14 questions concerning various qualifications for the position, goals if the candidate were selected, and past experience that would be relevant to the job. Dkt. # 45-20. The interviewers were provided a scoring matrix that gave varying weight to each of the 14 questions. Dkt. # 45-19. This method is not certainly not wholly objective, but plaintiff's description of the process as "wholly subjective" in not supported by the evidence. It is unlikely that any hiring process is ever entirely objective, and there will always be factors outside of purely objective qualifications that affect the ultimate hiring decision. Evidence of subjective criteria will typically not be considered sufficient to establish pretext unless "the criteria on which the employers ultimately rely are entirely subjective in nature," and courts have "long respected employers' wide latitude 'in setting job standards and requirements and in deciding whether applicants meet those standards.'" Ford, 45 F.4th at 1218-19 (quoting Conroy v. Vilsack, 707 F.3d 1163, 1177 (10th Cir. 2013); see also Turner v. Public Service Co. of Colorado, 563 F.3d 1136, 1145 (10th Cir. 2009) (noting that there is "certainly a level of subjectivity in any interview-based selection process" and the use of subjective criteria is not inherently discriminatory). The subjective components of the interview process in this case were balanced with an effort to rank the applicants based on a set of objective criteria, and plaintiff has not shown that the hiring process was so subjective that it gives rise to the appearance that the City's stated reason for selecting another candidate for the water treatment plant superintendent position was pretextual.

**APP. 1275**

Plaintiff argues that the City's decision to change the job description after his successful grievance was a "backdoor to favor the two unqualified white and younger applicants." Dkt. # 53, at 27. Even if the Court assumed that the City changed the job description to widen the pool of applicants, this by itself does not tend to show that City acted with the intention of discriminating against plaintiff because of his race or age. The mere fact that the City changed the job description and expanded the potential pool of applicants does not inherently suggest that the City took this action to discriminate against plaintiff because of his race or age. See Conroy, 707 F.3d at 1179 (readvertising a position and lowering the qualifications to attract more applicants was not evidence that the employer sought to discriminate against the plaintiff). Even if the Court were to assume Hunter had some personal animus against plaintiff, he still has the burden to come forward with some evidence suggesting that Hunter selected another candidate for a prohibited reason. Plaintiff has not identified any comments by co-workers or other incidents suggesting that he was subjected to mistreatment because of his race or age. Instead, plaintiff argues that he was obviously more qualified for the position of water treatment plant superintendent, and he claims that the hiring process and the decision to select another candidate are sufficient evidence of pretext. Id. at 28-29.

In some cases, a court may be willing to infer pretext "when the facts assure us that the plaintiff is better qualified than the other candidates for the position . . . ." Jones v. Barnhart, 349 F.3d 1260, 1266-67 (10th Cir. 2003). The Tenth Circuit has cautioned that "'pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants,' but only by demonstrating an 'overwhelming' merit disparity." Santana v. City and County of Denver, 488 F.3d 860, 865 (10th Cir. 2007) (quoting Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1319 (10th Cir. 1999)). An employee's own belief that he is better

15

**APP. 1276**

qualified for a position than other candidates is not sufficient to establish pretext, and a plaintiff must do more than offer "self-serving appraisals." Ford, 45 F.4th at 1219.  The Court must ultimately assess whether an employer could have believed in good faith that the selected candidate was more qualified than the plaintiff.  See Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1308 (10th Cir. 2005).

Applying this standard, the Court finds that the City had a good faith belief that Hutchcraft was better qualified for the position of water treatment plant superintendent than plaintiff.  Plaintiff is correct that Hunter has not disputed that plaintiff was qualified for the position, and Hunter acknowledges that plaintiff's educational and technical qualifications were strong.  Dkt. # 45-6, at 164.  However, this was not the only consideration when selecting a candidate for the position, and leadership and managerial skills were equally important to Hunter.  Id. at 164-65.  Hunter found that Hutchcraft "was fairly high across all of the categories," even if he was not the strongest candidate in any particular category.  Id.  The overall scores from both rounds of interviews support Hunter's opinion that Hutchcraft was generally viewed as the best all-around candidate, even though every interviewer noted plaintiff's outstanding educational qualifications.  Conroy, 707 F.3d at 1175 (the plaintiff's strong technical skills alone did not make her the best candidate when leadership and managerial skills were considered more important by the employer).

Plaintiff has not met his burden to show that the City's stated reason for selecting Hutchcraft for the position of water treatment plant superintendent was pretextual.  It is clear that plaintiff believes he was the strongest candidate for the position, but this by itself is not enough to support a workplace discrimination claim.  Plaintiff was very strong in the areas of education and technical skills, but interviewers consistently found that plaintiff was lacking in other areas.  The City

**APP. 1277**

incorporated objective criteria into the hiring decision, and the City was not required to wholly remove subjective considerations from the hiring process. Plaintiff has not shown that the City's decision to select Hutchcraft for the position of water treatment plant superintendent was pretextual for race or age discrimination, and summary judgment should be granted to the City on plaintiff's disparate treatment claims based on race and age discrimination.

**Retaliation**

The City argues that plaintiff has failed to produce evidence showing that he suffered an adverse employment action for engaging in protected activity or that any minor harms allegedly suffered by plaintiff were motivated by a desire to retaliate against plaintiff for engaging in protected activity. Dkt. # 45, at 26. Plaintiff responds that Hunter has cancelled his projects and isolated him from coworkers in retaliation for filing grievances contesting the City's decision to award the water treatment plant superintendent position to Hutchcraft. Dkt. # 53, at 30. He also claims the City's decision to reopen the position of water treatment plant superintendent after his successful grievance was retaliatory, and he claims that the City should have awarded him the position as the only qualified candidate after the City's initial decision to award the position to Hutchcraft was set aside. Id.

Under Title VII and the ADEA, it is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged workplace discrimination.[4]  42 U.S.C. § 2000e-3(a); Mauldin v. Driscoll, 136 F.4th 984, 995 (10th Cir. 2025).  To prove a prima

---

[4]     The parties dispute whether the OADA provides a claim for retaliation.  Dkt. # 45, at m25; Dkt. # 53, at 29.  The Court finds that it is unnecessary to resolve this issue, because has not produced any evidence tending to show that he has a viable retaliation claim under federal or state law.

**APP. 1278**

facie case of retaliation, plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the opposition and the adverse action. Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). The law is clear that reporting workplace discrimination to the EEOC is protected behavior, but protected opposition broadly encompasses any type of communication putting the employer on notice that the employee is challenging allegedly discriminatory behavior. Walkingstick Dixon v. Oklahoma ex rel. Regional University System of Oklahoma Board of Regents, 125 F.4th 1321, 1339 (10th Cir. 2025); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999); McCue v. State of Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999). An employee may establish causation by showing that the adverse employment action occurred soon after the protected activity. Annett v. University of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004); Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982). "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). If the plaintiff can establish a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Pinkerton v. Colorado Dep't of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009). If the employer comes forward with a legitimate, non-discriminatory reason for its actions, the burden shifts to the employee to show that employer's stated reason is pretextual. Id.

The City challenges plaintiff's retaliation claims on the ground that he cannot establish a prima facie case of retaliation for protected activity concerning race or age discrimination, because

18

**APP. 1279**

he did not suffer an adverse employment action in retaliation for engaging in protected activity. There is no dispute that plaintiff filed grievances challenging the City's decision to award the water plant superintendent position to Hutchcraft after both rounds of interviews, and plaintiff succeeded in overturning the first decision on the basis that the City failed to follow its own employment policies. Dkt. # 45-16. The Commission treated plaintiff's grievance as a non-selection grievance based on the misapplication of City policies, and it did not consider his complaints of racial discrimination. Dkt. # 45-15, at 2. The City's human resources department separately investigated plaintiff's allegations of racial discrimination after the completion of the second hiring process, and found no evidence that discriminatory animus had any part in the employment decision. Id. at 9. Plaintiff clearly made a complaint of racial discrimination concerning the hiring decision for the water plant superintendent position prior to filing his EEOC charge, and he submitted his grievance to the City on August 2, 2021. Dkt. # 45-14 (plaintiff's initial grievance challenging the City's decision on the grounds of City policy and racial discrimination). Plaintiff's EEOC charge does include an allegation of age discrimination and, even though plaintiff contends that he mailed the charge in November 2021, it was not received by the EEOC until August 2022. Plaintiff clearly engaged in protected opposition to allegedly discriminatory behavior, and he can satisfy the first element of a prima facie case of retaliation.

Plaintiff prepared a document outlining his allegations of retaliatory acts committed by City employees, and plaintiff contends the allegedly retaliatory acts began in 2014.[5] Dkt. # 53-12.

---

[5]    The Court notes that plaintiff never undertakes any type of analysis in his response (Dkt. # 53) as to which of the acts listed in his document could qualify as an adverse employment action. Plaintiff attempts to state as an undisputed fact that he suffered "multiple instances of retaliation . . . after his second grievance was denied," and he simply cites 32 pages of deposition testimony without making any attempt to identify any specific act or acts that

**APP. 1280**

Plaintiff testified in his deposition that a former supervisor, Roy Foster, believed that plaintiff held a grudge against Foster after plaintiff failed to receive a promotion, and Foster gave plaintiff less desirable work assignments. Dkt. # 53-11, at 3-4. Plaintiff alleges that Hunter gave him poor performance reviews and shut down his projects after he filed a grievance challenging the City's decision to award the water treatment plant superintendent position to Hutchcraft. Dkt. # 53-11, at 5-10; Dkt. # 53-12, at 1. Hunter stopped having staff meetings in July and August 2021, and plaintiff believes this was an attempt to exclude him from plant management operations. Dkt. # 53-11, at 11-12. Plaintiff includes a lengthy list of Hunter's allegedly retaliatory acts, which include ignoring his concerns about plant operations, giving him tasks outside of his job duties, setting unreasonable deadlines for assignments, and acting in an aggressive manner towards plaintiff. Dkt. # 53-12, at 2-3. Plaintiff alleges that Cathey Gillingham, a procurement coordinator, failed to consult plaintiff before sending out a bid to vendors, and plaintiff perceived that he was excluded from the process because he had filed a grievance. Dkt. # 53-11, at 12-13. Plaintiff believes that Hutchcraft regularly excludes plaintiff from meetings or project discussions, and he claims that Hutchcraft has excluded plaintiff from social gatherings at work. Dkt. # 53-12, at 2-3. Plaintiff also argues that the City's act of changing the job description after his first successful grievance to the Commission was a retaliatory act meant to prevent him from receiving the water plant superintendent position. Dkt. # 53, at 30.

---

could qualify as an adverse employment action to support a retaliation claim. Dkt. # 53, at 25. The Court has reviewed the full summary judgment record and has considered all of the evidence, but any failure to frame the issue in a particular manner is due to plaintiff's counsel's failure to make more specific arguments on this issue.

**APP. 1281**

Plaintiff's retaliation claim is not based on single substantial act that constitutes an adverse employment action but, instead, it appears that plaintiff is trying to prove retaliation in a manner similar to a hostile work environment theory. Many of the alleged acts of retaliation are more properly classified as perceived personal slights rather than discrete acts that had any concrete effect on his employment, and there is no evidence that plaintiff's job assignment, pay, schedule, or any condition of his employment has been affected. For the purpose of a retaliation claim, the aggrieved employee is not required to show that an adverse action actually affected the terms or conditions of employment, but an action will be considered "materially adverse" if it would have deterred a reasonable person from making or supporting a charge of discrimination. Culp v. Remington of Montrose Golf Club, LLC, 133 F.4th 968 (10th Cir. 2025). Plaintiff does not make any argument that the alleged acts of exclusion or aggression towards him actually deterred him from pursuing a charge of discrimination or that these acts altered the terms or conditions of his employment. Instead, he places substantial emphasis on the City's decision to change the job description to expand the potential pool of applicants. Changing the job description for the plant superintendent position had no effect on the terms or conditions of plaintiff's employment and, in any event, the action did not deter plaintiff from making future challenges to perceived discriminatory conduct. The Court agrees with the City that plaintiff has not shown he suffered an adverse employment action that would support a retaliation claim.

The parties do not offer a separate pretext analysis in the context of plaintiff's retaliation claims but, even if the Court were to reach this issue, the Court would conclude that plaintiff could not establish that the City's stated reason for selecting another candidate for the water plant superintendent position was pretextual for engaging in retaliatory conduct. The Court has separately

21

**APP. 1282**

considered whether this action tended to support plaintiff's claim that the City's explanation selecting another candidate for the water plant superintendent position was pretextual. See supra at 13-17. For the same reasons, the Court would also find reopening the position of water treatment plant superintendent after plaintiff's first successful grievance was not pretextual, and the City has established that it had a legitimate, non-discriminatory reason for reopening the position. Plaintiff's retaliation claims would fail at the pretext stage even if he could establish a prima facie case of retaliation.

**IT IS THEREFORE ORDERED** that Defendant City of Tulsa's Motion for Summary Judgment and Brief in Support (Dkt. # 45) is **granted**. A separate judgment is entered herewith.

**DATED** this 2nd day of June, 2025.

_____

CLAIRE V. EAGAN

UNITED STATES DISTRICT JUDGE

**APP. 1283**

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| HUA JIANG, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 23-CV-255-CVE-CDL** |
| | ) | |
| CITY OF TULSA, | ) | |
| | ) | |
| **Defendant.** | ) | |

**JUDGMENT**

This matter has come before the Court for consideration and an Opinion and Order (Dkt. # 56) granting defendant City of Tulsa's motion for summary judgment has been entered.  Judgment for the defendant and against the plaintiff is hereby entered pursuant to the Court's Opinion and Order.

**IT IS SO ORDERED** this 2nd day of June, 2025.

_____

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

**APP. 1284**