# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

HUA JIANG,

        Appellant/Petitioner,

v.

CITY OF TULSA,

        Appellee/Respondent.

Case No. 25-5097

---

## RESPONSE BRIEF ON BEHALF OF APPELLEE CITY OF TULSA

On Appeal from the United States District Court
For The Northern District of Oklahoma
The Honorable Claire V. Egan, United States District Judge
District Court Case No. 23-CV-255-CVE-CDL

---

**RESPECTFULLY SUBMITTED**,

HAYES T. MARTIN, OBA #32059
Assistant City Attorney
R. Lawson Vaughn, OBA #21557
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
hmartin@cityoftulsa.org
lvaughn@cityoftulsa.org

**September 18, 2025**
**Oral Argument Requested**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ........................................................................ iii

PRIOR OR RELATED APPEALS .................................................................1

STATEMENT OF THE ISSUES ....................................................................1

STATEMENT OF THE CASE/STATEMENT OF FACTS ...................................1

    A.   Background ........................................................................................1

    B.   Statement of Facts ............................................................................2

    C.   Procedural History ..........................................................................11

SUMMARY OF THE ARGUMENT .............................................................12

ARGUMENT AND AUTHORITIES ............................................................13

I.   The District Court Correctly Found That Plaintiff Could Not Establish Pretext On His Disparate Treatment Claims. ........................................................13

    A.   The City had a legitimate non-discriminatory reason to select a candidate other than Plaintiff. ......................................................................18

    B.   There is no evidence of pretext.........................................................19

        1. There were no procedural irregularities that uniquely disadvantaged Plaintiff. ..........................................................................................22

        2. The selection process was not improperly subjective. ................25

        3. Plaintiff was not so overly qualified as to support a finding of pretext. .......26

    C.   The totality of the circumstances does not raise an inference of discrimination ..................................................................................28

II. Plaintiff's Retaliation Claims Were Properly Dismissed...................................30

    A.   Plaintiff cannot establish a prima facie case for retaliation...........................30

    B.   The remaining *McDonnell Douglas* steps weigh in favor of the City. .........33

CONCLUSION .........................................................................................34

REQUEST FOR ORAL ARGUMENT .........................................................36

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT.................37

CERTIFICATE OF DIGITAL SUBMISSION ........................................................38

CERTIFICATE OF SERVICE ..............................................................................39

## TABLE OF AUTHORITIES

**Cases**

*Adamson v. Multi Cmty. Diversified Servs., Inc*., 514 F.3d 1136 (10th Cir. 2008).19

*Ames v. Ohio Dep't of Youth Servs.,* 605 U.S. 303 (2025) ............................... 32, 33

*Anderson v. Coors Brewing Co*., 181 F.3d 1171 (10th Cir. 1999)................... 21, 36

*Bauer v. Bailar,* 647 F.2d 1037, 1046 (10th Cir. 1981) ........................... 30, 31, 32

*Burke v. Regalado,* 935 F.3d 960, 1014 (10th Cir. 2019)........................................30

*Conner v. State*, 2025 OK 12 ...................................................................................17

*Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013).................................................27

*Cooper v. Wal-Mart Stores, Inc.,* 296 F. App'x 686 (10th Cir. 2008) ...................21

*E.E.O.C. v. Flasher Co., Inc*., 986 F.2d 1312 (10th Cir. 1992)...............................18

*Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202 (10th Cir. 2022).......................19

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210 (10th Cir. 2002) ..........................29

*Gross v. FBL Financial Servs., Inc.,* 557 U.S. 167 (2009) .....................................21

*Hamilton v. Oklahoma City Univ.,* 563 F. App'x 597 (10th Cir. 2014) ........... 27, 28

*Hansen v. SkyWest Airlines*, 844 F.3d 914 (10th Cir. 2016) ...................................34

*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187 (10th Cir. 2008).......... 20, 30, 34

*Jaramillo v. Colorado Jud. Dep't,* 427 F.3d 1303 (7th Cir. 1995) ..........................22

*Jencks v. Modern Woodmen of Am*., 479 F.3d 1261 (10th Cir. 2007)......................21

*Jenny v. L3Harris Techs., Inc.,* 24-4032, 2025 WL 2025312 (10th Cir. 2025) .......29

*Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202 (10th Cir. 2010) ....................... 21, 27

*Jones v. Barnhart*, 349 F.3d 1260 (10th Cir. 2003).................................................31

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).............................. 18, 19

*Morgan v. Hilti, Inc.,* 108 F.3d 1319 (10th Cir.1997)..............................................23

*Richison v. Ernest Grp.,* Inc., 634 F.3d 1123 (10th Cir. 2011) ..............................30

*Rivera v. City & County of Denver,* 365 F.3d 912 (10th Cir. 2004) .......................20

*Sanchez v. Denver Pub. Sch.*, 164 F.3d 527 (10th Cir. 1998) .................................35

*Singleton v. Wulff,* 428 U.S. 106 (1976) ....................................................32

*Smith v. City of Allentown,* 589 F.3d 684, 691 (10th Cir. 2009) ...........................21

*Sprague v. Thorn Am*s., Inc., 129 F.3d 1355 (10th Cir. 1997) ........................ 20, 21

*Stinnett v. Safeway, Inc.,* 337 F.3d 1213, 1218 (10th Cir. 2003) ...........................21

*Tapia v. City of Albuquerque*, 170 F. App'x 529 (10th Cir. 2006)................... 34, 35

*Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338 (2013) ...............................36

*Zamora v. Elite Logistics, Inc*., 478 F.3d 1160 (10th Cir. 2007)............................20

*Zisumbo v. Ogden Reg'l Med. Ctr*., 801 F.3d 1185 (10th Cir. 2015) .....................19

**Statutes**

42 U.S.C. § 2000e-2(a)(1)......................................................................................18

iv

Appellate Case: 25-5097    Document: 18    Date Filed: 09/18/2025    Page: 5

## PRIOR OR RELATED APPEALS

The Appellee represents that there are no prior or related appeals before this Court or other Federal District Courts.

## STATEMENT OF THE ISSUES

1.  Whether the district court erred in granting summary judgment to the City of Tulsa on Mr. Jiang's claims of race and age discrimination brought under Title VII, the Age Discrimination in Employment Act, and the Oklahoma Anti-Discrimination Act.

2.  Whether the district court erred in granting summary judgment to the City of Tulsa on Plaintiff's claims of retaliation brought under Title VII.

3.  Whether the district court erred in applying Rule 56 when granting summary judgment to the City of Tulsa on Plaintiff's claims.

4.  Whether the district court erred in applying the *McDonnell Douglas* framework as presented by both parties in granting summary judgment to the City of Tulsa on Plaintiff's claims.

## STATEMENT OF THE CASE/STATEMENT OF FACTS

### A. Background

Hua Jiang was not selected to be the Water Treatment Plant Superintendent for the AB Jewell Water Treatment Plant. Mr. Jiang brought suit against the City alleging discrimination and retaliation under Title VII, the Age Discrimination and Employment Act, and the Oklahoma Anti-Discrimination Act. The trial court granted the City's Motion For Summary Judgment which is the basis of the present appeal.

1

**B. Statement of Facts**

Appellant/Plaintiff Hua Jiang has worked for the City of Tulsa since 2010 and is currently employed as a Senior Engineer in the Water and Sewer Department of the City of Tulsa. [App. Vol. V, at 1262][1] Mr. Jiang was promoted to Senior Engineer in 2012. *Id.* "Jiang's duties have remained similar throughout his employment with the City, and he broadly provides technical support for the operation of water treatment plants." [App. Vol. V., at 1262-1263]

The City of Tulsa's charter provides for competitive procedures for appointments and promotions in the classified service. [App. Vol. V, at 1263] "When a person applies for original appointment or a promotion, the City's personnel director must initially certify that the applicant meets the minimum requirements for the position, which can include education and work experience." *Id.* The City of Tulsa's personnel policies and procedures allow for the substitution of experience for education; however, it does not allow for the substitution of specific degree requirements or specific coursework. *Id.* In 2021, applicants could substitute years of experience for education at a one-to-one rate, provided the applicant possessed at least half of the educational requirement. *Id*. The personnel director initially

---

[1] Citations to the record follow this format pursuant to 10th Cir. R. 28.1(A)(1). Citations to deposition testimony in that record include the line and page reference to aid the Court.

determines if an applicant should be certified for the position, however, this does not mandate that person's selection. *Id.*

In June 2021, Mr. Jiang applied to become the Water Treatment Plant Superintendent for the AB Jewell Water Treatment Plant. [App. Vol. V, at 1263] This position required "a bachelor's degree in engineering technology, environmental/biological sciences, or a related field" and "five (5) years of progressively responsible experience in the operation of a water treatment plant", or "an equivalent combination of training and experience per Personnel Policies and Procedures, Section 128." *Id.* at 1263-1264. Mr. Jiang was certified for the position, along with John Curry and Dylan Hutchcraft. *Id.* at 1264.

Each of the candidates had different qualifications. Mr. Jiang had a Ph.D. in environmental engineering and had prior employment as a process engineer and lab director. 1264. Curry had been the Maintenance Supervisor at the plant in question for seven years, managing a ten-person maintenance team. *Id.* Mr. Curry had 60 hours of education at Tulsa Community College. *Id.* Mr. Hutchcraft has been an Operations Supervisor at the Mohawk Water Treatment Plant since 2020 and was previously employed as a treatment plant operator. *Id.* Mr. Hutchcraft had additional experience as a squad leader in the Army National Guard and had 66 credit hours of education at Southern New Hampshire University. *Id.* at 1264-1265. All three individuals were certified by the personnel director, with Hutchcraft and Curry being

3

certified with the substitution of experience for education pursuant to the City's prior practice. [App. Vol. V, at 1265; App. Vol. II, at 321]

Stefanie Hunter, Water Supply Systems Manager, put together a panel consisting of herself, Eric Lee, and Joan Gausvik, and conducted the interviews on June 28, 2021. [App. Vol. II, at 376-377, 50:22-51:9] The panel utilized the same interview guide for each candidate with a scoring rubric. [App. Vol. II, at 599-608] The panel members were also able to take notes on a provided guide. *Id.*

Hunter scored Jiang at 30 points out of a total of 40, noting that Jiang had "excellent technical skills," however, Jiang "lack[ed] management experience" and was unable to complete over half of the interview guide "due to ineffective communication skills." [App. Vol. III, at 603] Hunter scored Dylan Hutchcraft at 31 points out of a total of 40, noting that Hutchcraft had "progressively responsible experience in operations and supervisory role." Hunter additionally noted that Hutchcraft had a "good understanding of technical requirements," "proven leadership ability," and was an "effective communicator." [App. Vol. III, at 604] Hunter scored John Curry at 26 points out of a total of 40, noting that Curry had "prove[n] leadership ability," however, he "lack[ed] technical expertise for plant operations." [App. Vol. III, at 605]

Joan Gausvik, Water Quality Assurance Manager, scored Jiang at 27 points of a total of 40, noting that Jiang had "poor time management during interview" and

4

had "difficulty communicating answer quickly." [App. Vol. III, at 606, 609] Ms. Gausvik scored Hutchcraft at 29 points out of a total of 40, noting that Hutchcraft had "good operations experience," "good knowledge of operations and regulatory," and "demonstrate[d] good management skills." [App. Vol. III, at 607, 609] Finally, Ms. Gausvik scored Curry at 28 points out of a total of 40, noting that Curry had "excellent maintenance knowledge," but "would need to learn process/regulatory." [App. Vol. III, at 608-609]

Eric Lee, the Operations Administration Manager, scored Jiang at 26 points out of a total of 40, noting that "[t]he City of Tulsa is fortunate to have Hua Jiang," "[h]owever this position needs to manage and lead people and the answers provided by Hua reflect a stronger focus on the plant instead of the people." [App. Vol. III, at 599] Lee scored Dylan Hutchcraft at 28 points out of a total of 40, noting "The City of Tulsa is fortunate to have Dylan Hutchcraft and his experience from the military and as a TPO and Operations Supervisor." [App. Vol. III, at 610] Lee also noted that Hutchcraft "brings an overall approach to this position and appears to be calm and approachable." *Id.* Lee stated that "what stuck out to me was it seemed like Mr. Hutchcraft had a better kind of approach on interpersonal skills of how he would develop a team" and that "[Hutchcraft] shared some past history of him being in the military and what worked and didn't work as far as building a team." [App. Vol. III, at 719, 99:5-16] Lee scored John Curry at 27 points out of a total of 40, noting that

5

John had "[g]ood management and leadership experience," but noted that Curry did "still not have a better understanding of the Operations side of the plaint." [App. Vol. III, at 601] Lee summarized his findings stating that "[t]his was a close interview with each candidate possessing a different skillset. Lee further noted that "Dylan [Hutchcraft] is learning both plants to have a broader operational knowledge and approach" and that "[t]he interviews revealed that Dylan probably has the better temperament and approach to managing and leading the staff at AB Jewell into the future." [App. Vol. III, at 602] In his deposition, Lee noted that he believed Jiang had "no direct operation or management experience or other articulated leadership experience," resulting in a lower past experience score. [App. Vol. III, at 729-730, 109:23-110:14]

Jiang was notified on June 30, 2021, that he was not selected for the position. [App. Vol. III, at 791-792] Jiang submitted a grievance to the Human Resources Department, which was denied, then appealed to the Civil Service Commission. [App. Vol. III, at 791-792; App. Vol II, at 802-804] The Civil Service Commission determined that the City did not follow its policies and procedures regarding the certification of the water treatment plant superintendent position in June 2021. [App. Vol. II, at 802-804] According to Personnel Director Erica Felix-Warwick, "[t]he Civil Service Commission concluded that the City's past practice regarding the substitution of experience for education did not reflect its written policies." [App.

Vol. II, at 322, ¶12] Additionally, "[f]ollowing that meeting, the City changed its Policies and Procedures to reflect its consistent past practice regarding certification." [App. Vol. II, at 322, ¶13] Felix-Warwick further states that, "[p]rior to the change in Policies and Procedures on August 26, 2021, the job description for the Treatment Plant Superintendent position was updated to better meet the needs of the Water and Sewer Department by expanding the training and experience minimum requirements and reflect the previous practice of the City of Tulsa." [App. Vol. II, at 323, ¶14; App. Vol. III, at 805-811] The proposed job description was circulated to Matt Vaughan and Stefanie Hunter. [App. Vol. III, at 805-811] It was ultimately approved by the head of the Public Works department, Clayton Edwards. [App. Vol. III, at 811] While Plaintiff contends that Ms. Hunter "testified that HR did not consult her," she actually stated that she was sure they did, but did not recall the specifics. [Appellant's Opening Brief, [Doc. 16], 10-12[2]; App. Vol. II, at 436-438, 110:2-112:6] Ms. Hunter further testified that the change reflected "how [HR] had applied the policy" and that was how it had been applied consistently in her experience. [App. Vol. II, at 445-446, 119:5-120:1; App. Vol. II, at 457-458, 131:21-132:2]

In September of 2021, Curry, Hutchcraft and Jiang again certified for the AB Jewell Water Treatment Plant Superintendent position. [App. Vol. II, at 323, ¶16] Matt Vaughan, Water Pollution Control Manager, participated in the interview panel

---

[2] Hereinafter referred to as "Appellant's Br." followed by the page number.

on September 29, 2021. [App. Vol. IV, at 825, 14:4-14; App. Vol. IV, at 914]

Vaughan scored Jiang at 3.87 points out of 5.0 points. [App. Vol. IV, at 900-901]

Vaughan scored Hutchcraft 3.325 points out of 5.0 points. [App. Vol. IV, at 906-907] Vaughan scored Curry at 3.0 points out of a total of 5.0 points. [App. Vol. IV, at 912-913] Vaughan rated Jiang the highest "[b]ecause he had the highest scores on the highest score total based on the interview questions." [App. Vol. IV, at 847, 36:17-22] Vaughan believed that all three candidates were qualified. [App. Vol. IV, at 875, 64:12-14] Vaughan supervises a Wastewater Treatment Plant who has a bachelor's degree in a non-related field, who has prior experience in maintenance and operations. [App. Vol. IV, at 885-886, 74:8-75:4] This employee had previously certified for a treatment plant superintendent position without a degree in a related field. [App. Vol. IV, at 886, 76:15-20] Vaughan was concerned about Jiang's ability to manage a treatment plant due to the prior complaint from a contractor. [App. Vol. IV, at 889-890, 78:22-12] Other than this occasion, Vaughan had never had a consultant approach him about not being able to work with one of the City's engineers. [App. Vol. IV, at 869-870, 58:14-59:2] Hunter stated that contractor complaints about Jiang were common. [App. Vol. II, at 500-502, 174:20-176:4] Hunter stated in the instance referenced by Vaughan, Jiang disagreed with the contractor despite the fact that regulations required the project to be done in a certain

8

way. [App. Vol. II, at 503, 177:10-18] This was only reflected in one scoring category on Vaughan's score sheet. [App. Vol. IV, at 890, 79:13-16]

Jo Brown, Water Quality Assurance Manager, participated in the interview panel on September 29, 2021. [App. Vol. IV, at 961, 12:14-16] Brown scored Jiang at 1.725 out of a possible 5 points. [App. Vol. IV, at 896-897] Brown scored Hutchcraft at 3.325 out of a possible 5 points. [App. Vol. IV, at 902-903] Brown scored Curry at 3.375 out of a possible 5 points. [App. Vol. IV, at 908-909] Brown stated that her scores reflected who she thought the best candidate was. [App. Vol. IV, at 1017-1018, 68:24-69:1] Brown felt that Curry had done the best job. [App. Vol. IV, at 1019, 69:18-25] Brown felt that Hutchcraft's interview demonstrated leadership abilities. [App. Vol. IV, at 994, 45:5-17]

Stefanie Hunter also participated in the interview panel on September 29, 2021. Hunter scored Jiang at 3.375. [App. Vol. IV, at 898-899] Hunter scored Hutchcraft at 4.15 points out of 5.0 points. [App. Vol. IV, at 904-905] Hunter scored Curry at 3.725 points out of 5.0 points. [App. Vol. IV, at 910-911] Hunter used the scoring matrix to ensure that she was not biased against anyone, but it was not the final deciding factor. [App. Vol. II, at 489-490, 163:22-164:3] Hunter stated that there was not a single deciding factor. [App. Vol. II, at 489, 164:6-9] Hunter made the final hiring decision. [App. Vol. II, at 559, 233:16-19. Hunter needed someone who "checked all the boxes" for both technical knowledge and leadership ability.

9

[App. Vol. II, at 489, 164:6-165:4] Hunter stated that Jiang had great technical ability, but his leadership ability was not great. *Id.* Hunter stated that Curry's leadership ability was great, but his technical knowledge was not great. *Id.* In her opinion, Dylan was "kind of even across all the board" and was "fairly high across all of the categories." [App. Vol. II, at 490-491, 164:10-165:4] Hunter believed that Hutchcraft "had been leading a team of operators, implementing changes that were positive changes, and he had just demonstrated that he had the ability to do that." [App. Vol. II, at 539, 213:19-25] Jiang acknowledged that it is "pretty common" for operations supervisors like Hutchcraft to promote into the plant superintendent position. [App. Vol. I, at 119, 55:2-6] Hunter believed that Jiang had "demonstrated that his interpersonal skills were not what we needed in the position." [App. Vol. II, at 540, 214:3-8]

Following his non-selection, Jiang submitted a second grievance. Jiang's second grievance was investigated by the Human Resources Department and denied. This grievance was heard by the Civil Service Commission on January 13, 2022. [App. Vol. IV, at 1049-1052] The Civil Service Commission determined that "the City did follow its policies in this matter." [App. Vol. IV, at 1050-1051]

On August 5, 2022, the EEOC Chicago District Office received Jiang's Charge of Discrimination. [App. Vol. II, at 323-326] Jiang's Charge of

10

Discrimination alleged discrimination based on race, national origin, retaliation, age, and failure to promote starting on February 1, 2021. [App. Vol. II, at 323]

**C. Procedural History**

On June 2, 2023, Mr. Jiang filed a Petition in Tulsa County District Court, Case No. CJ−2023−1968. [App. Vol. I, at 12-27] On June 26, 2023, the City of Tulsa removed this action to federal court. [App. Vol. I, at 8-11] The City of Tulsa filed a Partial Answer and a Motion to Dismiss the Equal Pay Act claim on June 29, 2023. [App. Vol. I, at 28-35]  Plaintiff responded to the Partial Motion to Dismiss and did not object to the dismissal of Equal Pay Act claim without prejudice. [App. Vol. I, at 36] After that dismissal, Mr. Jiang alleged claims of discrimination and retaliation under Title VII, the Age Discrimination in Employment Act, and the Oklahoma Anti-Discrimination Act.  On December 20, 2024, the City of Tulsa filed a Motion For Summary Judgment as to all claims. [App. Vol. I, at 37-64] On January 28, 2025, Plaintiff filed a response to the summary judgment motion. [App. Vol. V, at 1107-1138] Defendant filed a reply on February 11, 2025. [App. Vol. V, at 1250-1261] On June 2, 2025, the trial court entered its Order and Opinion properly granting summary judgment for the City on all claims.  [App. Vol. V, at 1262-1283] That Order was followed by the Judgment entered on June 2, 2025. [App. Vol. V, at 1284] On June 13, 2025, Plaintiff filed his Notice of Appeal initiating the present appeal. [App. Vol. V, at 1285-1286]

11

## SUMMARY OF THE ARGUMENT

The district court correctly granted City of Tulsa's Motion For Summary Judgment as to all claims. While the district court found, and the City of Tulsa did not contest, that Mr. Jiang was able to establish a prima facie case of discrimination, it also found that the City presented legitimate, nondiscriminatory reasons which Mr. Jiang had no evidence were pretextual. The district court's finding is supported by the undisputed facts in this case that, while he was qualified for the Water Treatment Plant Superintendent position, Mr. Jiang was not the strongest candidate as he lacked the managerial, leadership, and interpersonal skills necessary to manage the plant.

Similarly, the district court correctly found that the Plaintiff was not retaliated against for engaging in protected opposition to discrimination. The district court correctly determined that Plaintiff failed to establish a prima facie case for retaliation and that the City was entitled to summary judgment. However, the district court additionally found that even if Plaintiff established a prima facie case, he was not able to establish pretext.

In making its findings, the district court weighed the evidence in the light most favorable to Plaintiff, but he was unable to prevail because his contentions were not supported by the record. The district court did not make arguments on the City's behalf when ruling but simply rephrased the City's legitimate business justification.

Plaintiff cannot identify any genuine disputes of material fact that precluded summary judgment.

Finally, the district court properly applied the *McDonell Douglas* burden-shifting framework in this case. Both the City and Plaintiff presented their positions in line with this framework and, thus, the test was appropriate. Despite his arguments on appeal, Plaintiff did not present any other method of proof to demonstrate discrimination or retaliation and has thus waived any such argument here. To the extent the Court is willing to entertain Plaintiff's attempts to raise this argument here, Plaintiff has not presented sufficient evidence to support even an inference of intentional discrimination, whether analyzed under *McDonnell Douglas* or any other test.

For the reasons set forth herein, the Order of the District Court should be affirmed.

## ARGUMENT AND AUTHORITIES

### I.    The District Court Correctly Found That Plaintiff Could Not Establish Pretext On His Disparate Treatment Claims.

The Plaintiff alleges in this lawsuit disparate treatment claims under both Title VII, the Oklahoma Anti-Discrimination Act[3], and the Age Discrimination in

---

[3] After briefing this issue, the Oklahoma Supreme Court ruled that claimants under the Oklahoma Anti-Discrimination Act must submit a tort claim under the Oklahoma Governmental Tort Claims Act. To the extent that of these claims would survive analysis here, the City is entitled to sovereign immunity. *Conner v. State*, 2025 OK 12, ¶ 10.

Employment Act, specifically alleging that he was discriminated against based on his race, national origin, and age. Plaintiff presented no direct evidence of discrimination. [App. Vol. V., at 1271] When considering circumstantial evidence, the Tenth Circuit has consistently analyzed each of these under the framework set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). While Plaintiff states that "[t]he City and the District Court below analyzed these claims under the *McDonnell Douglas* burden-shifting framework," Plaintiff also presented his evidence in the same framework. [Appellant's Opening Brief, [Doc. 16] at 2; App. Vol. V, at 23] In fact, Plaintiff only analyzed his discrimination claims in the context of pretext, consistent with the *McDonnell Douglas* framework. The district court correctly found that Plaintiff could not establish pretext on his discrimination claims and the City was entitled to summary judgment.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

"The framework for analyzing claims under Title VII is well established." *E.E.O.C. v. Flasher Co., Inc*., 986 F.2d 1312 (10th Cir. 1992). This Circuit has adopted the burden-shifting format set out in *McDonnell Douglas v. Green*, 411 U.S.

14

792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). This three-step analysis first requires the plaintiff to prove a prima facie case of discrimination. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145–46 (10th Cir. 2008). If the plaintiff establishes a prima facie case, the burden of going forward shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. *Id*. "If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision or show that the defendant's explanation for its action was merely pretext." *Id*. "Mere conjecture that the employer's explanation is pretext, however, is insufficient—as a matter of law—to show pretext." *Zisumbo v. Ogden Reg'l Med. Ctr*., 801 F.3d 1185, 1200 (10th Cir. 2015).

The City did not contest that Plaintiff could establish a *prima facie* case for discrimination, although the district court noted that there was no evidence in the record of the ages of Mr. Hutchcraft or Mr. Curry. [App. Vol. V., at 1271, 1274] "To establish a prima facie case of race or age discrimination, a plaintiff must show: (1) he is within the protected group; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." [App. Vol. V, at 1272, *citing* Ford v. Jackson Nat'l Life Ins. Co., 45 F.4th 1202, 1215 (10th Cir. 2022)]  Because the City did not contest the prima facie case of discrimination, the district court then moved on to the City's legitimate,

15

non-discriminatory reason for its hiring decision. This prima facie case is based on Plaintiff's two non-selections for the AB Jewell Water Treatment Plant Superintendent position. [App. Vol. V, at 1274; Appellant's Br. [Doc. 16], at 18] This non-selection provides the requisite adverse employment action for the prima facie case. However, Plaintiff's attempts to characterize other events as the adverse employment action at issue in this case must be disregarded.

If the Plaintiff meets his burden to support a prima facie case of discrimination, the burden shifts to the City to "come forward with some legitimate, non-discriminatory reason for the adverse employment action." *Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1195 (10th Cir. 2008). This burden is "exceedingly light." *Zamora v. Elite Logistics, Inc.,* 478 F.3d 1160, 1165 (10th Cir. 2007).

Once the City has established a legitimate reason for the termination, "the burden thus shifts back to Plaintiff to establish a genuine issue of material fact that these reasons were pretextual." *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997). Plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination." *Rivera v. City & County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). "In so doing, Plaintiff must show that [the City's] 'proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or

contradictory that a rational factfinder could conclude [they are] unworthy of belief.'" *Sprague,* at 1201 (alteration in original). Pretext may also be shown by establishing that he or she "was treated differently from other similarly-situated, nonprotected employees." *Cooper v. Wal-Mart Stores, Inc.*, 296 F. App'x 686, 693 (10th Cir. 2008). Furthermore, an age discrimination plaintiff bears the ""burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Financial Servs., Inc.,* 557 U.S. 167, 177 (2009).

"A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." *Stinnett v. Safeway, Inc.,* 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994)). Plaintiff "must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) "Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Regarding his age discrimination claim, Plaintiff bears the burden at all times to demonstrate that his age was the but-for cause of his non-selection. [App. Vol. V, at 1274, citing *Smith v. City of Allentown*, 589 F.3d 684, 691 (10th Cir. 2009)]

17

Furthermore, "[d]ebunking one of the employer's explanations defeats the case for summary judgment 'only if the company has offered no other reason that, if that reason stood alone (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining.'" *Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1310 (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995)).

**A. The City had a legitimate non-discriminatory reason to select a candidate other than Plaintiff.**

Stefanie Hunter selected the candidate that she felt was the best fit for her department. Each of the three candidates for the Water Treatment Plant Superintendent had different strengths and weaknesses. While Plaintiff had superior educational credentials, Plaintiff lacked management and leadership experience. Furthermore, Plaintiff demonstrated weakness when it came to interpersonal skills. Meanwhile, John Curry had excellent leadership skills, but he did not have any plant operations experience. Finally, Dylan Hutchcraft was the most balanced candidate, offering operations experience and demonstrated leadership skills.

The district court determined it "must ultimately assess whether an employer could have believed in good faith that the selected candidate was more qualified than the plaintiff." [App. Vol. V, at 1277; See *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d at 1308] The district court found that "that the City had a good faith belief that

18

Hutchcraft was better qualified for the position of water treatment plant superintendent than plaintiff." [App. Vol. V, at 1277] When Plaintiff discusses the qualifications of the candidates, he dismisses the strengths of the others and focuses primarily on his strength, education. There is no dispute that Plaintiff has excellent educational credentials, however, "leadership and managerial skills were equally important to Hunter." [App. Vol. V, at 1277] In fact, the district court found that "[t]he overall scores from both rounds of interviews support Hunter's opinion that Hutchcraft was generally viewed as the best all-around candidate, even though every interviewer noted plaintiff's outstanding educational qualifications." *Id.*

### B. There is no evidence of pretext.

Plaintiff has not met his burden to show that the reasons for his non-selection were pretextual. "On summary judgment, once the employer comes forward with a facially nondiscriminatory reason for an adverse employment decision, the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1321 (10th Cir.1997) *citing Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). Plaintiff fails to meet this burden, despite his contortions of the evidence.

As a preliminary matter, it is necessary to correct the many misstatements, to put it mildly, of Plaintiff regarding deposition testimony in this case. Both at the district court and in this proceeding, Plaintiff has routinely cited to several pages'

19

worth of deposition testimony to support statements which either do not appear or lack the surrounding context. While the most glaring examples of this practice relate to the testimony of Jo Brown, Plaintiff similarly misstates or misrepresents the testimony of the other interviewees as well.

Plaintiff consistently misstates the testimony of Jo Brown, just as he did at the district court.[4] In fact, it is unclear if Plaintiff ever accurately quotes Ms. Brown, as he uses no direct quotations and cites to at least 25 pages of deposition testimony in bulk without sourcing any statement. Plaintiff states that "[t]he District Court wholly ignored the testimony of Jo Brown that she felt targeted to be on the second panel" and that Brown claimed the "rewriting of the job description was discriminatory." [Appellant's Br., at 19] However, Plaintiff fails to support these assertions and demonstrates a complete lack of candor to the tribunal. Brown had no personal knowledge of the change in job description. Further, Brown specifically testified that she did not believe the job description change was discriminatory, stating, "I don't agree that HR was demonstrating they did this because of his race." [App. Vol. IV, at 1031, 82:23-24] Ms. Brown went on to state, "I have no idea why HR did the changes or made the changes in the job description. The only thing that I can infer is that they probably wanted a broader set of applicants." [App. Vol. IV, at 1031,

---

[4] Although these misstatements were addressed in the City's Reply Brief at the district court, Plaintiff chooses to repeat them here. [App. Vol. V, at 1251]

20

83:3-6] It is entirely unclear what support Plaintiff has for the statement that Ms. Brown "felt targeted to be on the second panel." [Appellant's Br., at 19] Ms. Brown stated that "And I do believe I was -- I believe I was chosen to be on a panel because I didn't know [the background]." [App. Vol. IV, at 1039, 90:19-20] Later, Plaintiff states "Brown testified she felt purposefully selected for the second panel because she would not select Jiang," again citing to no specific statement. [Appellant's Br., at 25] Instead, Ms. Brown stated that she "scored basically off of the matrix and the questions as they were answered." [App. Vol. IV, at 1016, 68:15-16] Ms. Brown further stated that her final scores reflected who she thought was the best candidate. [App. Vol. IV, at 1017-1018, 68:24-69:1]  Certainly, Ms. Brown was critical of the job description change based not on her personal knowledge, but on the representations of Plaintiff's counsel, but this is clearly not sufficient evidence to support a finding of pretext. [App. Vol. IV, at 1023-1024, 74:20-76:10; App. Vol. IV, at 1027-1029, 78:15-80:2] However, Plaintiff's assertions that he attributes to Ms. Brown are largely absent from her testimony.

Similarly, Plaintiff misstates the testimony of Stefanie Hunter and Eric Lee. For instance, Plaintiff states that Hunter "testified that HR did not consult her," when she actually stated that she was sure that they did but did not remember, as stated above. This is reinforced by the record evidence that she was included on the job description change emails. Regarding Eric Lee, Plaintiff states that Mr. Lee "testified

21

it was not appropriate to change a job description to allow a non-degree applicant to certify and that management had not discussed removing degree requirements." [Appellant's Br., at 11] Like all of this cited deposition testimony, Plaintiff fails to directly cite any statements and cites to a bulk of testimony without directing the Court's attention precisely. Mr. Lee actually testified that it was not appropriate to change a job description to "put who you want in a position," but then added "[t]o get the best candidates that are available to fill a position, we have changed – the City has changed numerous job descriptions throughout the years to make sure that we get well qualified people." [App. Vol. V, at 1208, 127:24-128:9] It is unclear where in the cited testimony Mr. Lee stated that management had not discussed removing degree requirements. The only possible statement that the City could locate was Mr. Lee's statement that he did not "have any personal knowledge on why [the job description] was changed." [App. Vol. III, at 765, 145:6-15] As demonstrated above, the relevant management staff did discuss the change, but Eric Lee, who was not a manager in a different chain of command, was apparently not consulted. The record does not support Plaintiff's assertion here. Failing to find evidence of pretext in the actual words of the City's witnesses, Plaintiff resorts here to misattributions and fabrications.

**1. There were no procedural irregularities that uniquely disadvantaged Plaintiff.**

"The mere fact that the City changed the job description and expanded the potential pool of applicants does not inherently suggest that the City took this action to discriminate against plaintiff because of his race or age." [App. Vol. V, at 1276] Plaintiff appears to focus on two alleged irregularities: the initial certification of Mr. Curry and Mr. Hutchcraft and the change in the job description to reflect the City's practices. "For an inference of pretext to arise on the basis of a procedural irregularity, we have held that there must be some evidence that the irregularity 'directly and uniquely disadvantaged a minority employee.'" *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1213 (10th Cir. 2010) *citing Randle v. City of Aurora,* 69 F.3d 441, 454 n. 20 (10th Cir.1995). "[N]ot every failure to follow every directive in an employer's policy manual gives rise to an inference of pretext for invidious discrimination." *Johnson v. Weld Cnty., Colo.,* 594 F.3d 1202, 1213 (10th Cir. 2010). There is ample evidence in the record that the substitution of education for experience in this case reflected longstanding City practices.

Regarding the change in job description, this Circuit has found that relaxing a job description and readvertising a position does not constitute an act of discrimination. *Conroy v. Vilsack,* 707 F.3d 1163 (10th Cir. 2013). In the present case, the City's "procedural deviation does nothing more than generally disadvantage applicants and has no bearing on their protected status, if any." *Hamilton v. Oklahoma City Univ.*, 563 F. App'x 597, 606 (10th Cir. 2014). In

23

*Hamilton,* the Plaintiff applied for a position requiring a PhD prior to appointment. *Hamilton v. Oklahoma City Univ.,* 563 F. App'x 597, 598 (10th Cir. 2014). Hamilton was the only applicant with a PhD; however, the other two finalists were what was "commonly termed "all but dissertation" ("ABD") candidates, meaning they had completed all of the requirements for receiving their doctoral degrees except their dissertations." *Id*. The Tenth Circuit found that the hiring of an "all but dissertation" candidate was not indicative of pretext, despite the individual lacking the qualifications for the position. *Id.* at 606. "It disadvantaged *all* job applicants with a Ph.D., without directly and uniquely disadvantaging *any* applicant on the basis of gender." *Id.* (emphasis in original). While not precedential, the holding in *Hamilton* is incredibly persuasive given its similarities to the present case. Like *Hamilton¸* neither the certification of Mr. Curry and Mr. Hutchcraft nor the change in job description disadvantaged Plaintiff on the basis of his age, race, or national origin. At most, it disadvantaged applicants who possessed at least a bachelor's degree in a related field.

Plaintiff confusingly argues that "the District Court speculated for the City that amending the job description was to expand the pool of applicants," while noting that the change was made to expand the training and experience minimum requirements. [Appellant's Br., at. 17-18] This change necessarily expands the pool of applicants, demonstrated in this case by the qualification of Mr. Hutchcraft and

Mr. Curry. The district court did none of the "judicial guesswork" discussed in the Eid Concurrence in *Jenny.* That concurrence looks specifically at the application of *Reeves*, which was not necessary here where Plaintiff cannot show pretext. *Jenny v. L3Harris Techs., Inc.*, 24-4032, 2025 WL 2025312, at *8 (10th Cir. July 21, 2025) (Eid, J. concurring) discussing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). Regardless of the motive for changing the job description, it did not directly and uniquely disadvantage Plaintiff on the basis of any protected trait.

### 2. The selection process was not improperly subjective.

"Plaintiff's assertion that the hiring criteria for the water treatment plant superintendent position was "wholly subjective" is not supported by any credible evidence." [App. Vol. V, at 1275] As he did below, Plaintiff relies entirely on *Garrett v. Hewlett Packard,* which is distinguishable from the present case. In *Garrett*, there was "no set of objective criteria by which employees were differentiated" and the record did not show how the rankings were determined. 305 F.3d 1210, 1218 (10th Cir. 2002). Instead, this evaluation mirrors that in *Hinds v. Sprint/United Mgmt. Co.*, as the evaluation was "transparent and reflected that all listed employees were evaluated according to the same criteria, based on the same scale, and assessed in non-discriminatory terms." 523 F.3d 1187, 1200 (10th Cir. 2008); *See* App. Vol. III, at 599-608; App. Vol. IV, at 896-949. The criteria and scoring at issue are completely transparent and not at all similar to those in *Garrett.*

25

In fact, Plaintiff's counsel referred to questions 1 through 10 as "fairly objective questions" during Hunter's deposition. [App. Vol. II, at 488, 162:3-5] As the District Court noted, "[t]he subjective components of the interview process in this case were balanced with an effort to rank the applicants based on a set of objective criteria, and plaintiff has not shown that the hiring process was so subjective that it gives rise to the appearance that the City's stated reason for selecting another candidate for the water treatment plant superintendent position was pretextual." [App. Vol. V, at 1275] Regarding the subjective questions, supervisory positions, like the one at issue in this case, "require abilities not fully measured by objective standards." *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981). The interview scoring was similar to that in *Bauer*, where, for each subjective judgment "the relevant abilities were articulated in guidelines with reasonable specificity." *Id.* The record evidence shows that each of the interviewers used the same criteria to evaluate the candidates and documented their findings. Hunter considered the results to "make sure that [she] wasn't biased against anyone." [App. Vol. II, at 489-490, 163:22-164:5] Plaintiff has presented no evidence that the hiring process was so wholly subjective as to demonstrate pretext and the district court's decision should be affirmed.

**3. Plaintiff was not so overly qualified as to support a finding of pretext.**

"It is clear that plaintiff believes he was the strongest candidate for the position, but this by itself is not enough to support a workplace discrimination

26

claim." [App. Vol. V, at 1277] The Court can only "infer pretext when the facts assure us that the plaintiff is better qualified than the other candidates for the position." *Jones v. Barnhart,* 349 F.3d 1260, 1267 (10th Cir. 2003). Plaintiff's argument here is the same argument that failed in *Conroy v. Vilsack.* Plaintiff presented no evidence that he is overwhelmingly more qualified on the whole than either other applicant. Instead, Plaintiff contends, and the City does not contest, that Jiang has superior educational and technical experience than the selected candidate. However, Plaintiff made no contention that he has superior management, supervisory, or leadership experience than either other applicant, because there is no evidence that would support that contention. Plaintiff did not contest Hutchcraft's credentials related to management and leadership. [App. Vol. V, at 1114, p. 5, ¶19] Instead, Plaintiff focused entirely on educational background. "Title VII does not do away with traditional management rights. An employer has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria." *Bauer v. Bailar,* 647 F.2d 1037, 1046 (10th Cir.1981) (citations omitted). Plaintiff's disagreement with the City's assessment is not sufficient to support his allegation of pretext. Plaintiff was a qualified candidate, as was Mr. Curry. However, Mr. Hutchcraft was the most well-rounded and best suited the needs of the City. There is no evidence to support Plaintiff's position that the process was so wholly subjective as to support an inference of pretext.

27

**C. The totality of the circumstances does not raise an inference of discrimination.**

Having failed to present any evidence of pretext, Plaintiff now seeks to present his evidence under a new theory. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). "By contrast, if the theory simply wasn't raised before the district court, we usually hold it forfeited." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). Furthermore, "[A]n appellant may waive an issue by inadequately briefing it." *Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019). Plaintiff does not enumerate what additional analysis he proposes under his 'totality of the circumstances' and fails to give the City any opportunity to oppose it. Thus, to the extent that Plaintiff seeks now to abandon his presentation under *McDonnell Douglas* and propose a new theory, he has waived or forfeited that argument by failing to raise it below and failing to adequately brief it.

However, under any evaluation of the record in this case, Plaintiff fails to raise an inference of discrimination. The district court did not require Plaintiff to 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant ... were a pretext for discrimination.'" *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 145 S. Ct. at 1553 (2025) (Thomas, J. and Gorsuch, J. concurring)

(quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). Instead, the district court correctly found no evidence to support Plaintiff's claims. The district court did not require Plaintiff to make a showing of "pretext-plus," but rather noted that "Plaintiff has not identified any comments by co-workers or other incidents suggesting that he was subjected to mistreatment because of his race or age," or in other words Plaintiff presented no direct evidence of discrimination. The district court then went on to discuss Plaintiff's alleged circumstantial evidence as it related to pretext. Plaintiff had argued that he "presented evidence of three separate grounds establishing pretext- Procedural irregularities, subjectiveness, and Mr. Jiang is clearly more qualified" in opposing the City's Motion for Summary Judgment. [App. Vol. V, at 1135] Plaintiff has not identified what additional evidence would somehow change the district court's inquiry.

Despite Plaintiff's claim that he presented evidence in a 'totality of the circumstances,' Plaintiff clearly presented his case under the *McDonnell Douglas* framework and should not be permitted to adopt a new legal theory that was not put before the district court. In any case, Plaintiff fails to show how he might prevail under a different test. Whether Plaintiff proceeds under *McDonnell Douglass*, convincing mosaic, or totality of the circumstances, the district court correctly found that there was no evidence that would support a reasonable inference of discrimination.

## II. Plaintiff's Retaliation Claims Were Properly Dismissed

The District Court correctly determined that Plaintiff failed to establish a prima facie case for retaliation and the City was entitled to summary judgment as a matter of law. Just as he did below, Plaintiff fails to identify an adverse employment action with a causal connection to his protected opposition. In fact, Plaintiff again provides very little analysis related to retaliation whatsoever.

### A.    Plaintiff cannot establish a prima facie case for retaliation.

Title VII "makes it unlawful to retaliate against an employee for opposing practices made unlawful by the statute." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 924 (10th Cir. 2016). The *McDonnell Douglas* framework also applies to Plaintiff's retaliation claim under Title VII. *See Id*. at 925. Retaliation claims under the ADEA are analyzed in the same manner. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201 (10th Cir. 2008).

"Under this framework, the plaintiff must first establish a *prima facie* case of retaliation by showing (1) 'that he engaged in protected opposition to discrimination,' (2) 'that a reasonable employee would have found the challenged action materially adverse,' and (3) 'that a causal connection exists between the protected activity and the materially adverse action.'" *Id*.

"An adverse employment action constitutes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

30

significantly different responsibilities, or a decision causing a significant change in benefits.'" *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) citing *Annett v. University of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004). While the Tenth Circuit liberally defines adverse employment action, the Court will not consider "a mere inconvenience or an alteration of job responsibilities" to be an adverse employment action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998), *abrogated on other grounds by Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024).

While Plaintiff can demonstrate that he engaged in protected opposition, Plaintiff cannot demonstrate a materially adverse employment action causally connected to his protected opposition. Plaintiff must show that he suffered an adverse employment action. The district court ruled:

> Many of the alleged acts of retaliation are more properly classified as perceived personal slights rather than discrete acts that had any concrete effect on his employment, and there is no evidence that plaintiff's job assignment, pay, schedule, or any condition of his employment has been affected.
>
> App Vol. V, at 1282

Plaintiff did not identify which of these actions, many of which concerned individuals other than the decision-maker, constituted an adverse employment action. Plaintiff argued below "[P]laintiff did testify (which is evidence) these retaliatory acts did occur by Ms. Hunter" and left it up to the district court to

31

decipher. [App. Vol. V, at 1136] Plaintiff then went on to argue that "[d]efendant wholly ignores the actions of the Personnel Director and the HR department following Mr. Jiang's first grievance (a protected activity)." *Id.* The district court correctly found that changing the job description to allow more candidates to qualify was not an adverse employment action for Plaintiff.

Plaintiff now argues primarily that the "rewriting of the job description (August 26, 2021) and the second denial of Jiang's promotion (October 8, 2021)" are sufficient to infer causation. Plaintiff did not allege at any point in the briefing below that the second non-selection was retaliatory. Instead, Plaintiff relied on the change of the job description and his "Retaliation and Intimidation Records". [App. Vol. V, at 1247-1249] Plaintiff now attempts to rewrite the record below by arguing that the non-selection was retaliatory. As stated above, Plaintiff has forfeited or abandoned any theory not raised at the district court. However, even the second non-selection is insufficient here. Plaintiff cannot prove that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013). Plaintiff argues that temporal proximity is sufficient to infer causation here. This Circuit has held that a month and a half may be sufficient to infer causation on its own, but three months is not. *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999). The district court noted

32

that "Plaintiff clearly made a complaint of racial discrimination concerning the hiring decision for the water plant superintendent position prior to filing his EEOC charge, and he submitted his grievance to the City on August 2, 2021." [App. Vol. V, at 1280] Plaintiff was notified of his non-selection on October 8, 2021, 67 days after his opposition. In the present case, temporal proximity is not sufficient on its own to show causation. Surely the Court would not incentivize waiting exactly three months to avoid an inference of causation at the expense of the City's operational efficiency. This case differs greatly from one where an employee suffers an adverse employment action such as discipline or termination after protected opposition. Here, the City was actively in the process of filling its job opening after the first grievance and this temporal proximity is insufficient on its own to show causation. This is particularly true when Plaintiff cannot prove "but-for" causation when the City's non-selection of Plaintiff post-opposition is consistent with the decision made pre-opposition. Plaintiff's protected opposition should not serve to bind the City's decision-making process completely by either delaying a selection or mandating the selection of Plaintiff to avoid an inference of causation.

**B. The remaining *McDonnell Douglas* steps weigh in favor of the City.**

The district court did not separately analyze the legitimate business justification for changing the job description, because it correctly found that it was not an adverse employment action. However, if the district court were to reach this

issue, the court would conclude that Plaintiff could "not establish that the City's stated reason for selecting another candidate for the water plant superintendent position was pretextual for engaging in retaliatory conduct." [App. Vol. V, at 1282] The district court also correctly found that "reopening the position of water treatment plant superintendent after plaintiff's first successful grievance was not pretextual, and the City has established that it had a legitimate, non-discriminatory reason for reopening the position." [App. Vol. V, at 1283] The analysis here is largely the same as the discrimination claim. The City had legitimate business justifications for each of its actions and Plaintiff cannot demonstrate pretext. In fact, Plaintiff does not appear to offer any separate pretext arguments in his brief either. The district court's granting of summary judgment for the City on Plaintiff's retaliation claims should be affirmed.

## CONCLUSION

For the reasons fully set forth above, the District Court did not err in granting the City of Tulsa's Motion For Summary Judgment. Accordingly, the City of Tulsa respectfully requests this Court to affirm the District Court's Order.

**RESPECTFULLY SUBMITTED**,

JACK C. BLAIR
City Attorney

/s/ Hayes T. Martin_____
Assistant City Attorney

34

R. Lawson Vaughn, OBA #21557
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
hmartin@cityoftulsa.org
lvaughn@cityoftulsa.org

## **REQUEST FOR ORAL ARGUMENT**

Appellee believes that oral argument would be of assistance to this Court, and respectfully requests oral argument

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,303 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2508 Build 16.0.19127.20192) 32-bit in 14-point Times New Roman font.

Date: September 18, 2025

/s/ Hayes T. Martin_____
Assistant City Attorney
R. Lawson Vaughn, OBA #21557
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
hmartin@cityoftulsa.org
lvaughn@cityoftulsa.org

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1)    all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)    if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3)    the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Defender Antivirus version number 1.437.31.0, last checked for security updates September 18, 2025 at 12:44 p.m., and according to the program are free of viruses.

Date: September 18, 2025

/s/ Hayes T. Martin_____
Assistant City Attorney
R. Lawson Vaughn, OBA #21557
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
hmartin@cityoftulsa.org
lvaughn@cityoftulsa.org
**ATTORNEYS FOR APPELLEE CITY OF TULSA**

38

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to the following:

Daniel E. Smolen

Mark A. Smith

Date: September 18, 2025

/s/ Hayes T. Martin_____
Assistant City Attorney
R. Lawson Vaughn, OBA #21557
Senior Assistant City Attorney
175 E. 2nd Street, Suite 685
Tulsa, Oklahoma 74103-3205
(918) 596-7717 (Telephone)
(918) 596-9700 (Facsimile)
hmartin@cityoftulsa.org
lvaughn@cityoftulsa.org
**ATTORNEYS FOR APPELLEE CITY OF TULSA**